ZURICH GENERAL ACCIDENT & LIABILITY INSURANCE COMPANY, LTD. *v.* SIMMS COMPANY.

4-4748

Opinion delivered October 11, 1937.

*Buzbee, Harrison, Buzbee & Wright,* for appellant.
*Gaughan, Sifford, Godwin & Gaughan,* for appellees.

BAKER, J. A judgment was rendered in the circuit court of Ouachita county against the appellant for $1,003, upon an alleged breach of a policy of employer's liability insurance issued by the appellant in favor of the appellees.

It was alleged that two former employees, H. B. Blackwell and Leon V. McAdoo, instituted separate suits against appellees to recover damages alleged to have been suffered by reason of the negligence of the appellees. Notice of these suits was given to the appellant company with the request that it defend the actions then pending in the circuit court, in accordance with the contract or policy of insurance. The appellant company declined to take upon itself the defense of the suits, and, thereafter, appellees defended the suits and judgments were rendered for $500 in favor of Blackwell, and $200 in favor of McAdoo. This suit was, then, instituted by the appellees against the appellant for the recovery of

the amounts so paid, and in addition for attorneys' fees and costs incurred, together with interest, and from a judgment in favor of the appellees comes this appeal.

The whole controversy is presented to us upon an agreed statement of facts or stipulation, copy of which follows:

"Agreement

"It is hereby stipulated and agreed by and between the plaintiffs, Simms Company and Simms Oil Company, acting through their attorneys, Gaughan, Sifford, Godwin & Gaughan, and the defendant, Zurich General Accident & Liability Insurance Company, Ltd., by its attorneys, Buzbee, Harrison, Buzbee & Wright, that the following stipulation as to the facts in the above and foregoing case may be treated as true, with the right reserved in favor of each party to introduce any additional competent testimony not inconsistent with the following facts, and with the further specific right reserved in favor of the plaintiffs to object to the incompetence (for any reason) of any portion or all of paragraph No. 6 herein:

1.

"The defendant issued a contract of insurance commonly known as an employer's liability policy in favor of the plaintiff, Simms Oil Company, the predecessor of plaintiff, Simms Company; that the said Simms Company succeeded to all the rights of its predecessor, Simms Oil Company, and assumed all its liabilities; and that said policy or contract of insurance was in full force and effect at the time that H. B. Blackwell and Leon V. McAdoo claimed that they received injuries while in their employment with the Simms Oil Company, which will hereinafter be referred to as the assured.

2.

"Due notice of the claims presented by the said Blackwell and the said McAdoo was given to the defendant, and the defendant refused to handle the claims or defend the actions brought by Blackwell and McAdoo, on the ground that the claims so made by them were based on occupational diseases, and were not covered

by the policy. Actions were instituted by Blackwell and McAdoo respectively against the assured, which resulted in a judgment in favor of Blackwell in the sum of $500, and a judgment in favor of McAdoo in the sum of $200. The assured paid both judgments, together with the costs accrued by reason thereof, and such judgments have been satisfied and so indicated on the record by the attorneys for the plaintiffs in those actions. In addition to the payment of said judgments, the assured also incurred costs and attorney's fees in the amount of $137.30 in the Blackwell case, and $117.95 in the McAdoo case. If the plaintiffs in this action are entitled to recover, the total amounts will be the sums of $637.30 in the Blackwell case and $317.95 in the McAdoo case, or a total of $955.25, with interest at the rate of 6 per cent. per annum from and after February 28, 1936, until paid; and it is agreed and understood that the costs and attorneys' fees in said actions above mentioned, were reasonable and incurred in good faith.

### 3.

"Blackwell brought suit against the assured because of the alleged negligence of the assured, in the following particulars, to-wit:

" 'The plaintiff's injuries were due to the carelessness and negligence of the defendant, Simms Oil Company, its agents, servants and employees, in exposing him to said coke dust, dust-laden air and poisonous, noxious and deleterious vapors, fumes and gasses, consisting of carbon dust, carbon monoxide and hydrogen sulphide over a long period of time, which finally in March, 1934, resulted in t⌐'ally and permanently injuring the plaintiff's lungs.'

### 4.

"McAdoo brought s ، against the assured because of the alleged negligence of the assured in the following particulars, to-wit:

" 'That said defendant company was negligent and careless in that they failed to furnish the plaintiff a reasonably safe place in which to do his work, and sent him into the tanks, stills, tubes and other machinery for

the purpose of having said plaintiff clean out and clean up said machinery, without furnishing him with a·gas mask or any other protection from the poisonous fumes and vapors that arose from the refuse gases and other substances that gathered in said tanks, tubes, stills and other machinery of said refinery. That said defendant company well knew the danger of said gases, vapors and other fumes, or could have known by making an inspection, and that said carelessness and negligence was the direct and proximate cause of plaintiff's injuries as herein alleged.'

### 5.

"The insuring clauses of the policy issued by the defendant are as follows:

#### "Insuring Clause

" 'In consideration of the premium herein provided and of the warranties herein made the Zurich General Accident and Liability Insurance Company, Limited, (herein called the company) does hereby agree with the assured, respecting bodily injuries, or death at any time resulting therefrom, including instantaneous death, accidentally suffered or alleged to have been suffered, during the policy period defined in special condition 7, by any employee or employees of the assured, while engaged in the assured's business operations described in special condition 5, at the places mentioned in special condition 4, as follows:

" 'Agreement 1—Damages.

" 'To indemnify the assured against loss from the liability imposed by law upon the assured for damages.'

### 6.

"On February 20, 1935, the agents of the defendant, Marsh & McLennan, wrote to the secretary of the assured and offered to add an indorsement, upon the payment of an additional premium by the assured, known as occupational disease coverage, to the employer's liability policy herein. This coverage was declined by the assured. The insuring clause of the said occupational disease indorsement is as follows:

" 'In consideration of an additional premium computed as explained herein, it is agreed that the insurance provided under paragraph one (b) of the agreements of the policy to which this indorsement is attached is hereby extended to indemnify this employer against loss by reason of the liability imposed upon this employer by law for damages on account of occupational disease suffered by any employees covered by the said policy necessitating cessation of work during the policy period, including death at any time resulting therefrom, provided such occupational disease shall have arisen out of this employer's operations covered by the said policy, subject, however, to the limits of liability hereinafter stated.

" 'With respect to the extension of coverage provided by this indorsement, the word, ''accident'' and the word ''injuries,'' wherever used in the said policy, shall be construed to include occupational disease as hereinbefore defined.'

"It is agreed that Blackwell claimed he was injured in March, 1934, and McAdoo claimed he was injured in July, 1934.

"While plaintiffs agree that on February 20, 1935, the agents of the defendant wrote a letter offering to write an indorsement above set out, plaintiffs object to the competency, relevancy and materiality of the said letter, and to the said indorsement.

"The foregoing clauses in paragraph 5 are the only ones involved in the policy which was issued to the assured."

It will be observed from the foregoing stipulation, as to the facts upon which the judgment was rendered, that the plaintiffs in the original suits against the appellees alleged that they were exposed to noxious, poisonous gas and dust-laden air that caused damage to their lungs. McAdoo alleged that for hours at a time he breathed gases which were present about the machinery that he cleaned. The allegations contained in Blackwell's complaint are set forth in paragraph "3" of the stipulation showing that he had breathed fumes, gases, carbon monoxide and hydrogen sulphide over a long period of

time, and that this resulted finally in March of 1934 in permanently injuring his lungs. Both of the original plaintiffs against the appellees alleged a breach of duty in failing to use ordinary care to provide a safe place in which to work. The appellant here relies upon the facts as developed in the agreed statement of facts, as showing that the two plaintiffs who sued the appellees were suffering from occupational diseases for which there could be no recovery at common law, and that the policy of insurance to indemnify the appellees was not sufficient to cover this alleged liability. Therefore, the two principal propositions are urged to reverse the trial court's action. The first is to the effect that the servants of appellees suffered from occupational diseases for which there was no recovery at common law, and the second is the policy of insurance sued on did not cover the liability adjudged against the appellees in the former trials.

The appellant presents a very interesting proposition in relation to occupational diseases. It will be observed that these occupational diseases are not defined or covered by any stipulation of fact, but the argument is made that the conditions as alleged in the original complaint, copied in the stipulation, present as a matter of law the pathology and history of occupational diseases. Numerous authorities are cited in that regard, some of which we will consider in relation to the testimony furnished us by appellant.

We have just examined appellant's authority, *Associated Indemnity Corp.* v. *State Industrial Acc. Com'n,* 124 Cal. App. 378, 12 Pac. (2d) 1075. Therein occupational disease is defined as follows: "An occupational disease such as that which is before us in the present proceeding (silicosis) is one in which the cumulative effect of the continued absorption of small quantities of deleterious substance from the environment of the employment ultimately results in manifest pathology; any one exposure to the deleterious substance is inconsequential in itself, but the accumulation of repeated absorptions is the factor which brings about the disease."

In that case we find that the employee had been at work for a period of fourteen years, the last three or four of which he cleaned rock-grinding machines with blower and waste, and was exposed to rock dust daily. About three years before the date of the hearing the applicant first noticed his breath getting short. This condition gradually progressed so that ultimately he could hardly handle a fifty-pound ladder. Finally he noticed pains in his chest and his condition required him to sit down and rest quite often. From then, on, he got gradually worse, the symptoms continuing the same, but more marked, except that in addition he noticed a dry hacking cough setting in.

A short definition is given in the case of *Adams* v. *Acme White Lead & Color Works,* 182 Mich. 157, 148 N. W. 485, L. R. A. 1916A, 283 Ann. Cas. 1916D 689.

"In occupational diseases it is drop by drop, it is little by little, day after day, for weeks and months, and finally enough is accumulated to produce symptoms."

The finding of fact in the last cited case was that during the period between December 18, 1912, and June 27, 1913, Adams was in the employ of the Acme White Lead & Color Works; that during said period, while in the course of his employment, he contracted an occupational disease, to-wit, red lead poisoning, upon the premises of the company; that on June 27, 1913, he died as a result of said disease. The announcement of the court in the case under consideration was "that the undisputed medical evidence shows that lead poisoning does not arise suddenly, but comes after long exposure. It is a matter of weeks or months or years, brought about by inhalation, or by the lead coming into the system with food through the alimentary canal, or by absorption through the skin.

Another definition is: "A diseased condition arising gradually from the character of the work in which the employee is engaged. It does not occur suddenly, but is a matter of slow development." *Peru Plow Company* v. *Industrial Commission,* 311 Ill. 216, 142 N. E. 546.

The announcement in this last cited case is to the effect that the applicant had worked for plaintiff in error for five years as a machinist, operating a lathe used in boring out or enlarging the inside of metal wheel hubs. Prior to that time he had been employed as a machinist in other shops and in the cement mills at Oglesby. The operation of the machine upon which he worked for plaintiff in error caused a fine metal dust to arise from the iron upon which he was working. The dust was sufficiently light to float in the air and was discernible in the sunlight. From this dust the clothes of workmen would turn yellow with rust. There being no appliances for the purpose of carrying this dust away, it was inhaled by the workmen. Medical testimony was offered in regard to the physical condition of the employee, a physician testifying in part that the condition of the employee's lungs was such as could be produced by a hard, cutting dust, which would irritate the mucous membrane, but that soft dust, such as coal, chalk, or cement would have little or no damaging effect. The question was whether the employee was suffering as a result of an accident or from an occupational or industrial disease.

· Perhaps the most interesting case is that of *United States Radium Corp.* v. *Globe Indemnity Co.,* 13 N. J. Miss. 316, 178 Atl. 271. This case, the last one we will cite upon this matter, offers what is, perhaps, the typical occupational or industrial disease, and in addition a policy of insurance or indemnity contract containing, it is said, an identical insuring clause to the one under consideration. Most readers of newspapers remember that Helen Tuck was employed by the plaintiff and worked from May 29, 1917, until August 24, 1921, a little more than four years, in mixing certain luminous materials with adhesives, the mixture being commonly known as "radium paint."

She was applying said mixture to numerals and designs on watch dials and other objects, and she, as stated in the opinion, became affected with an occupational disease resulting from her employment, wherein she "ingested by mouth" the mixture known as "radium paint." It was not a question of whether she suffered an acci-

dental injury or if she was afflicted with an occupational disease. She pleaded or conceded the point and sought a recovery in damages for an occupational disease.

There are other cases of similar import, and perhaps of equal authority as the ones that we have cited, but we think that the foregoing are typical, thoroughly illustrative of what the courts have found and determined under certain facts and conditions to be occupational diseases. We have taken the trouble to call attention to the facts and conditions motivating or at least furnishing the basis to the courts' announcements wherein they have distinguished a certain class of injuries or afflictions arising in industry from which injuries the employees have suffered, and these have been classed as industrial or occupational diseases as distinguished from accidents. We have not attempted to state all the facts in any one of the cases, but we have stated salient matters as a basis upon which each announcement has been made as above set forth.

It appears that time is one of the essential elements in distinguishing what may in one instance be an accident or might in another result in the typical occupational disease, and there is no difficulty in determining the one typical case of accident and another typical case of disease incident to some particular occupation or work. The foregoing citations, however, show servants engaged for weeks, months, and, in some instances, years before they fell victims of the contaminated air and environment in which they had to live and breathe.

In these suits, wherein the appellees were sued, McAdoo filed his suit alleging that such injury was due to carelessness and negligence of the Simms Oil Company in that they failed to exercise ordinary care to furnish the plaintiff a safe place in which to do his work, but sent him into tanks, stills, tubes and other machinery for the purpose of having said plaintiff clean out said machinery. The length of time that McAdoo was so employed is not stated. It may have been for many weeks or months. On the other hand we are not prepared to

say, as a matter of law, that it was for any very extended period.

Blackwell's case was not essentially different. He alleges negligence in failing to use ordinary care in furnishing a safe place to work; that the exposure to coke dust, dust-laden air and poisonous, noxious, deleterious vapors, fumes and gases and hydrogen sulphide, over a long period of time, finally, in March, 1934, resulted in totally and permanently injuring the plaintiff's lungs. Apparently that statement "over a long period of time" might furnish a means for the settlement of the controversy as against Blackwell, but upon due consideration we are compelled to say that "a long period of time" is a very indefinite and uncertain statement. Perhaps if such statement were made by one who was suffering, the length of time would be measured by the intensity of his pain, his physical distress and the resulting conditions therefrom, also, by the actual or supposed danger and discomfort in a performance of labor under the conditions stated. None of these things are described with more certainty than above set out. No expert testimony as to the condition of either one of the two parties suing is offered and we are asked as a matter of law to state under the foregoing facts that the afflictions of the two parties suing the appellees are occupational diseases. Whatever might be our impulse upon casual or superficial examination of these matters we feel ourselves influenced or governed by that time honored rule, that verdicts of juries and judgments of courts should be upheld when there is any substantial evidence to support them, and that for this purpose testimony should be considered in aspects most favorable to the appellee.

Therefore, from this viewpoint we suggest that it could not be reasonably controverted that if these employees had ever been injured upon the occasion of one or two daily periods of work, no one would hesitate to say that they were suffering as a result of accidents. On the other hand if there was an indefinitely long period of years in which they were engaged in their occupations and insidious diseases followed the occupation, as

a natural sequence of conditions, on account of the work done in foul air in which they were forced to labor, necessarily, the elements of an accident would not be present. We are not prepared to say in regard to these two cases where the line of demarcation should be drawn to define the limit, under the conditions stated, that one must be employed in order that his affliction be classed or termed an occupational disease. On that account, we cannot say that the court, as a matter of law, committed an error in finding against the appellant in that regard.

The remaining question for consideration is the effect of the policy of indemnity insurance. That gives us no real concern since the question of liability must be determined, as we think, in this matter upon appeal, by the facts rather than upon a construction of the insurance contract. We have already copied in the stipulation the insuring clause. It is unnecessary to repeat it. We do not take time or occasion to cite numerous authorities to the effect that insurance policies, if ambiguous, will be construed most favorably for the insured and against the insurer. We do not hesitate to say that if there was liability of the appellee companies for the bodily injuries, for which they sued, the policy might well be construed, without doing violence to any part thereof, as sufficient to indemnify the insured. There is no question that these matters arose during the life of the policy. The serious proposition is that it is contended the two afflicted employees did not suffer their bodily injuries accidentally, but the insurance contract is even broader than that. The insurer agrees to indemnify for bodily injuries alleged to have been suffered during the policy period defined in special condition 7, by any employee or employees of the assured, while engaged in the assured's business operations described in special condition 5, at places mentioned in special condition 4.

What those special conditions are we do not know. But under "Agreement 1—Damages" is the contract to indemnify the insured against loss from the liability imposed by law upon the assured for damages.

Appellant argues forcefully that in 1935 their agents offered to the insured, for an additional consideration or premium, to add an indorsement upon the policy known as "occupational disease coverage," and that this should be considered by us and to aid us in the interpretation of the policy to the effect that it did not have an occupational disease coverage prior to that time. This offer was refused. This fact, even if admitted, does not possess that attribute of proof.

It may explain appellant's position at that time, but it does not bind the appellees who thought otherwise, and who regarded their prospective losses by reason of damages as fully covered by the policy as written.

We think the position of appellant is very similar to that of the insurer in the case of *Life & Casualty Insurance Co. of Tenn.* v. *Barfield,* 187 Ark. 676, 679, 61 S. W. (2d) 698. Thereunder, liability is indicated, and appellant has not met or produced that measure of proof to establish the exception.

Gwaltney worked a week in oil and slush and suffered oil poisoning in his feet. Just how long he must have worked under the same conditions to have been deemed a victim of occupational disease and to have thereby freed his master from liability we cannot determine as a matter of law. *Standard Pipe Line Co.* v. *Gwaltney,* 186 Ark. 230, 53 S. W. (2d) 597.

It follows we could not, for the same reasons, say just when the insurer in such case would cease to be liable. But ordinarily if there was liability of the insured, the insurer must respond.

Judgment affirmed.

GRIFFIN SMITH, C. J., and McHANEY, J., dissent.

GRIFFIN SMITH, C. J. (dissenting). While it is true that this case was tried upon an agreed statement of facts, and there is no testimony abstracted showing how long appellees had been exposed to conditions they allege occasioned their disabilities, yet it is clear they were not peremptorily coerced into unsafe places with respect to which they were strangers. On the contrary, they had been working from day to day at assignments with which

they were familiar, using tools or appliances ordinary to the employment, in circumstances common to the occupations.

Appellant's policy insured against "bodily injuries *accidentally* suffered." Sickness from any cause may be said to result in bodily injury, and by the same logic sickness is usually accidental, for there are few indeed who intentionally embrace a physical malady.

Though the liability judicially imposed upon appellant in the instant case does not depart far enough from accepted constructions to convert *all* accident insurance into policies guaranteeing health against disease in any of its forms, it seems to me that the majority opinion, though excellently written, takes liberties with the contract which have the effect of creating a liability where none existed.

I am authorized to say that Mr. Justice McHANEY concurs in this dissenting opinion.