**ST. PAUL FIRE AND MARINE INSUR-
ANCE COMPANY, Plaintiff,**

v.

**Willis P. COLEMAN and Anne Wyles
Coleman, d/b/a Lake Hamilton Marine
Service, Morgan Agar, James E. Stover,
Sr., William T. Stover, II, James E.
Stover, Jr., Vicki Ann Stover, Joe G.
Fetzek, Virginia M. Fetzek, Mary Cath-
erine Fetzek, Virginia Linda Fetzek, Jo-
seph T. Fetzek and William T. Stover,
Defendants.**

**Civ. A. No. 869.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

May 9, 1962.

Wright, Lindsey, Jennings, Lester &
Shults, Little Rock, Ark., for plaintiff.

Daggett & Daggett, Marianna, Ark.,
Eichenbaum, Scott & Miller, Catlett &
Henderson, Little Rock, Ark., for de-
fendants.

714

JOHN E. MILLER, Chief Judge.

This is an action for a declaratory judgment in accordance with 28 U.S.C.A. § 2201, declaring that the alleged occurrence of June 6, 1961, is not covered by the policy of insurance issued by plaintiff, and that with respect to the said occurrence and the injuries, damages, claims and demands resulting therefrom, the plaintiff has no liability either present or contingent to the defendants or any of them by reason of the said policy of insurance.

By stipulation signed by the attorneys for all the parties, and filed herein April 16, 1962, the parties have agreed that the facts are as stated in said stipulation, which are summarized as follows:

The plaintiff, St. Paul Fire and Marine Insurance Co., is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in St. Paul, Minnesota. It is authorized to do business in the State of Arkansas and engages in the business of writing insurance contracts covering various risks.

The defendants, Willis P. Coleman, Anne Wyles Coleman and Morgan Agar, are citizens of the State of Arkansas and reside in Garland County within the Western District of Arkansas, Hot Springs Division. The Colemans, husband and wife, are doing business under the name of Lake Hamilton Marine Service in Garland County, Arkansas. At all times pertinent hereto the defendant, Morgan Agar, was an agent, servant and employee of the defendants Colemans.

All of the remaining defendants are citizens of Arkansas and residents of Pulaski County in the Eastern District of Arkansas. The amount involved exceeds $10,000, exclusive of interest and costs.

On June 18, 1960, the plaintiff issues its Manufacturers' and Contractors' Liability Insurance Policy No. 566JX6126 to the defendants Coleman, d/b/a Lake Hamilton Marine Service, insuring them against public liability from June 18, 1960, to June 18, 1961, for bodily injury or property damage under certain conditions and subject to certain exclusions as provided in said policy of insurance. The limit of liability for bodily injuries to any one person is $25,000 and for bodily injuries resulting from any one accident the limit of liability is $50,000. The limit of liability for property damage arising out of any one accident is $5,000.

Attached to the complaint is a true and correct copy of the policy.

On October 20, 1961, civil action No. 51159 was filed in the Circuit Court of Pulaski County, Arkansas, by the defendants, Joe G. Fetzek, Virginia M. Fetzek, Mary Catherine Fetzek, Virginia Linda Fetzek and Joseph P. Fetzek, against the defendant Willis P. Coleman, d/b/a Lake Hamilton Marine Service, and the defendant Morgan Agar. The complaint in said cause contains the following allegations:

"On or about June 6, 1961, plaintiffs, Virginia M. Fetzek, Mary Catherine Fetzek, Virginia Linda Fetzek and Joseph P. Fetzek, were occupants of an inboard motor boat operated by William T. Stover, and owned by William T. Stover Company, Inc. Said boat was taken to the place of business of defendant Coleman for refueling. Defendant Coleman, as operator of a marine service on Lake Hamilton, maintained pumps for refueling of boats operating on Lake Hamilton and conducted the business of selling such fuel, which was high octane gasoline, inherently dangerous and volatile and requiring a high degree of care in handling. The fuel was placed in boats of purchasers by means of bringing the boat alongside defendant's dock near a pump, and permitting an employee of defendant to handle the refueling by taking a pump hose with a cutoff nozzle aboard the boat, and transferring fuel from the pump to the gas tank of the boat.

"On the date aforesaid, William T. Stover brought the boat to defend-

ant's dock and refueling was undertaken by Morgan Agar, an employee of defendant Coleman, acting in the scope of such employment. Defendant Agar removed the cap from the gas tank of the boat and in so doing he also disconnected the pipe between the cap and the tank where the pipe adjoined the tank, and poured fuel from the pump to the tank. A portion of the fuel missed the tank because the said connection had been removed, and fuel ran down into the bilge of the boat. The malfunction was ascertained by Morgan Agar, or in the exercise of due care should have been observed, because when he disconnected the pipe from the gas tank it resulted in the cap being five inches higher than the normal position. When the cap was replaced, Morgan Agar knew, or in the exercise of due care should have known, that the pipe was disconnected, and that gas had escaped into the boat bilge. Defendant Agar was negligent in disconnecting the pipe, in allowing the gas to enter the bilge of the boat, and in failing to warn plaintiffs of the danger thereof, and such negligence was a proximate cause of the subsequent fire and damage."

In said action the plaintiffs pray for damages as follows:

| Joe G. Fetzek | $60,165.50 |
| Mary Catherine Fetzek | 275,000.00 |
| Virginia Linda Fetzek | 50,000.00 |
| Joseph P. Fetzek | 10,000.00 |
| Virginia M. Fetzek | 163,281.12 |

On October 9, 1961, a suit, civil action No. 51100, was filed in the Circuit Court of Pulaski County, Arkansas, by defendants James E. Stover, Sr., William T. Stover, II, James E. Stover, Jr., and Vicki Ann Stover, against the defendant, Willis P. Coleman, d/b/a Lake Hamilton Marine Service, and the defendant, Morgan Agar. The complaint in said cause contains the following allegations:

"On or about June 6, 1961, plaintiffs, William T. Stover, II, James E.

Stover, Jr. and Vicki Ann Stover, were passengers in an inboard motor boat operated by William T. Stover, and owned by William T. Stover Company, Inc. Said boat was taken to the place of business of defendant Coleman for refueling. Defendant, Morgan Agar, an employee of Coleman, and while acting under his direct supervision and control and in the performance of his assigned duties, attempted to place high octane gasoline in the gas tank of the said boat. In so doing, said Agar disconnected the pipe leading to the gas tank and poured high octane gasoline into the bilge of the boat. Defendants Willis P. Coleman and Morgan Agar did not check to see that the boat was properly serviced and that no gasoline had been spilled into the bilge, and did not warn or otherwise call to the attention of William T. Stover the fact that gasoline had been poured into the bilge, although the gasoline fill pipe was still raised some five inches above its normal position when the gasoline cap was replaced and the motor of the boat started."

The plaintiffs prayed judgment for damages in the following amounts:

| James E. Stover, Sr. | $49,710.41 |
| William T. Stover, II | 250,000.00 |
| James E. Stover, Jr. | 175,000.00 |
| Vicki Ann Stover | 100,000.00 |

On November 24, 1961, a suit, civil action No. 51295, was filed in the Circuit Court of Pulaski County, Arkansas, by William T. Stover against the defendants, Willis P. Coleman, d/b/a Lake Hamilton Marine Service, and Morgan Agar, in which he seeks to recover the sum of $22,111.20. In his complaint it is alleged:

"On or about June 6, 1961, plaintiff, William T. Stover, drove an inboard motor boat owned by William T. Stover Company, Inc., to the place of business of defendant Coleman for refueling. Defendant Coleman,

as operator of a marine service on Lake Hamilton, maintained pumps for refueling of boats operating on Lake Hamilton and conducted the business of selling such fuel, which was high octane gasoline, inherently dangerous and volatile and requiring a high degree of care in handling. The fuel was placed in boats of purchasers by means of bringing the boat alongside defendant's dock near a pump, and permitting an employee of defendant to handle the refueling by taking a pump hose with a cutoff nozzle aboard the boat, and transferring fuel from the pump to the gas tank of the boat.

"On the date aforesaid, plaintiff brought the boat to defendant's dock and the refueling was undertaken by Morgan Agar, an employee of defendant Coleman, acting in the scope of such employment. Defendant Agar removed the cap from the gas tank of the boat and in so doing, he also disconnected the pipe between the cap and the tank, where the pipe adjoined the tank, and poured fuel from the pump to the tank. A portion of the fuel missed the tank because the said connection had been removed, and said fuel ran down into the bilge of the boat. The malfunction was ascertained by Morgan Agar, or in the exercise of due care should have been observed, because when he disconnected the pipe from the gas tank it resulted in the cap being five inches higher than the normal position. When the cap was replaced, Morgan Agar knew, or in the exercise of due care, should have known, that the pipe was disconnected, and that gas had escaped into the boat bilge. Defendant Agar was negligent in disconnecting the pipe, in allowing the gas to enter the bilge of the boat, and in failing to warn plaintiff of the danger thereof, and such negligence was the proximate cause of the subsequent fire and damage."

Paragraphs 10, 11, 12 and 13 of the stipulation of facts are as follows:

"10. After the refueling of the boat by Morgan Agar (which was the purpose for which the boat was brought to Coleman's by Stover), William T. Stover started the engine of the boat, and, after the mooring lines were cast off, started pulling away from the dock. If called as a witness, William T. Stover would testify under oath that the engine of the boat was not functioning properly and was running irregularly. As the boat was moving from the dock, the engine died, and the boat drifted slowly without power. William T. Stover, the operator, then requested assistance of the employees of the Colemans, who were then upon the dock, and who immediately began making preparation to go to the boat and bring it back to the dock. But the employees of Coleman had not actually left the dock when, approximately four minutes after the boat left the dock, and after it had traveled a distance of seventy-three feet from the dock, the boat caught on fire and burned. The boat was at all these times on the waters of Lake Hamilton, in Garland County, Arkansas, and directly in front of the property lines of the Colemans' property if said lines were projected outwards toward the center of the lake.

"A plat of Lake Hamilton, showing the entire lake and showing the Coleman property and the waters and shoreline adjacent thereto, is attached to this stipulation and may be considered as evidence in this case.

"11. The property upon which Willis P. Coleman and Anne Wyles Coleman operate their business known as Lake Hamilton Marine Service is a tract of land riparian to Lake Hamilton, having 425 feet of shoreline, adjacent to which are four floating docks affording boat storage space, moorage, boat repairs and

service facilities and access to the lake from the physical improvements situated upon the land and from the lake to the improvements upon the land. In the conduct of their business, the Colemans have on occasions moored boats of customers at points more distant from their floating docks than was the boat in question at the time of the explosion.

"12. Lake Hamilton is an artificial lake created by the Arkansas Power & Light Company by damming the Ouachita River. It covers approximately 7150 acres. It has 170 miles of shoreline when the lake is full, as it usually is during the summer months.

"13. For the purpose of this declaratory judgment action, and for that purpose only, and without the truth thereof being admitted for any other purpose whatsover, the Court may consider the various allegations of the various complaints which are quoted above in this stipulation as being true, except as they conflict with this stipulation."

In the Declarations, Item 3, the policy provides:

"The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage and divisions shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Limits of Liability | Divisions | | Advance Premiums |
|---|---|---|---|---|
| A. Bodily Injury Liability | $25,000 each person $50,000 each accident $ aggregate (Aggregate applies to Div. 4 only) | 1. 2. 3. 4. | Premises—Operations Elevators Independent Contractors Products—Completed Operations | $(46.20)'45.56 $ $ $ |
| B. Property Damage Liability | $ 5,000 each accident $25,000 aggregate (Aggregate applies to Divs. 1, 3 & 4 | 1. 2. 3. 4. | Premises—Operations Elevators Independent Contractors Products—Completed Operations | $10.00 $ $ $ |
| C. Medical Payments | $ each person $ each accident | 1. | Premises—Operations | $ |
| | | 2. | Elevators | $ |
| D. Contractual Liability of a Specified Type | $ each person $ each accident | 1. | Bodily Injury Liability | $ |
| | $ each accident $ aggregate | 2. | Property Damage Liability | $ |

Endorsements 12736 — Amend of Prem Condition 12772-Nuclear E Encl. $(

Total advance premium $(56.20)56.56"

The policy further provides:

"In consideration of the payment of the premium and the statements contained in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy, the ST. PAUL FIRE AND MARINE INSURANCE COMPANY herein called the Company, AGREES with the Insured, named in the declarations made a part hereof:

"INSURING AGREEMENTS

"I. Coverage A—Bodily Injury Liability

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

"Coverage B—Property Damage Liability

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident arising out of the hazards hereinafter defined.

"DEFINITION OF HAZARDS

"Division 1—Premises—Operations

"The ownership, maintenance or use of premises, and all operations."

Division 2 applies only to elevators and Division 3 to independent contractors.

Division 4 is as follows:

"Division 4—Products—Completed Operations

"(1) Goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the Named Insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the Named Insured or on premises for which the classification stated in division 1 of Item 5 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Named Insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the Insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 4 of the declarations specifically includes completed operations."

Section II of the Insuring Agreements is as follows:

"II. Defense, Settlement, Supplementary Payments.

"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the Company shall:

"(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof,

even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *"

Item 5 of the Declarations is as follows:

"Item 5.    Description        Code No.
         of Hazards

The rating classifications under the Description of Hazards do not modify the exclusions or other terms of this policy.

1.  Premises—Operations

Boat Yards—Public—including sale of boats, accessories, gasoline and oil, boat building and repair.
                        Code 2464

Boat storage and moorage including ship or dock rental
                        Code 3493

Building or premises—mercantile or manufacturing, not occupied by the insured—NOC—(Lessor's risk only)
                        Code 129"

The policy further states in the Exclusions as follows:

"EXCLUSIONS

"This policy does not apply:

"(a) under division 1 of the Definition of Hazards, and under coverage C, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the Named Insured, except insofar as this part of this exclusion is stated in the declarations to be inapplicable, (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining, or (3) aircraft;

"(b) under division 1 of the Definition of Hazards, to elevators;

"(c) under division 1 of the Definition of Hazards, and under coverage C, to (1) the Independent Contractors Hazard or (2) the Products—Completed Operations Hazard;"

The court has jurisdiction because of diversity of citizenship of the parties and the amount involved.

■    The policy was issued and delivered at Hot Springs, Arkansas. It became a completed contract upon delivery, acceptance of the policy and payment of the premium, all of which occurred in Arkansas. Therefore, it was an Arkansas contract and governed by its Laws. Massachusetts Protective Ass'n v. Oden, 186 Ark. 844, 56 S.W.2d 425, 426. See also John Hancock Mutual Life Ins. Co. v. Munn (8 Cir. 1951), 188 F.2d 1, 3.

■    The alleged acts of negligence for which the plaintiffs in the cases now pending in the state court are seeking to recover damages occurred in Arkansas. Therefore the determination of the question of whether the act or event amounts to negligence is governed by the Law of Arkansas. Leflar, Conflict of Laws, 1959 Ed., Sec. 110; St. Louis, I. M. & S. Ry. Co. v. Hesterly, 98 Ark. 240, 135 S.W. 874; Missouri Pac. R. R. Co., Thompson, Trustee, v. Reed, 204 Ark. 846, 165 S.W. 2d 364.

In Life & Cas. Ins. Co. of Tenn. v. Barefield, 187 Ark. 676, 61 S.W.2d 698, the court, at page 679 of 187 Ark., at page 699 of 61 S.W.2d said:

"The rule appears to be that, when proof is made of damage apparently within a policy of insurance, the burden is on the insurer to show that the injury or damage was caused by an event from the occurrence of which the insurer had exempted itself from liability."

In Riverside Ins. Co. of America v. McGlothin, 231 Ark. 764, 332 S.W.2d 486, the court at page 766 of 231 Ark., at page 488 of 332 S.W.2d, said:

"The rule is well established in this jurisdiction that when an insurance company claims that it is not liable on its policy because of some exception or exclusion against coverage, then the burden is on the

insurance company, not only to plead the exception, but also to prove facts that bring it within the exception. In United States Fire Ins. Co. v. Universal Broadcasting Corp., 205 Ark. 115, 168 S.W.2d 191, 193, we quoted from Life & Cas. Ins. Co. [of Tennessee] v. Barefield, 187 Ark. 676, 61 S.W.2d 698: * * *."

The policy provides liability under Coverage A, Bodily Injury Liability, of $25,000 for each person and a premium of $45.56 was paid by the insured for that protection. Under Coverage B, Property Damage Liability, the insured paid $10.00 for $5,000 protection on each accident. In the Insuring Agreements referred to, the plaintiff agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or as damages to property "sustained by any person, caused by accident and arising out of the hazards hereinafter defined."

The plaintiff on its brief in support of its contentions states:

"Since all of the defendants admit that the policy contains the 'Exclusion' set forth in Paragraph 16 of the complaint, it would appear that the argument in this brief may be directed to that exclusion and its effect under the circumstances presented here."

The exclusion referred to has heretofore been set forth, but since the plaintiff seems to rely so strongly upon the exclusion, it appears necessary to call attention to the material provisions of it again.

## "EXCLUSIONS

"This policy does not apply:

"(a) under division 1 of the Definition of Hazards, and under coverage C, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the named insured * * *."

Continuing, the plaintiff in its brief states:

"The policy does not apply under Division 1 of the Definition of Hazards (Premises—Operations) to the 'Products—Completed Operations' hazard.

"Referring to the Definition of Hazards, one finds that the 'Products' hazard applies to products (here gasoline) sold by the insured, if the accident occurs after possession of such products has been relinquished to others by the insured and if such accident occurs away from premises owned, rented or controlled by the insured.

"Again referring to the Definition of Hazards, the 'Completed Operations' hazard applies to operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the insured. The definition then states four exceptions to 'Completed Operations,' only one of which requires any discussion here. Operations will not be considered as 'Completed Operations' if they are 'operations for which the classification stated in Division 1 of Item 4 [5] of the Declarations specifically includes completed operations.' In the policy involved, the classifications are three in number, and they read as follows:

" 'Boatyards—Public—including sail boats, accessories, gasoline and oil, boat building and repair.

" 'Boat storage and moorage including ship or dock rental.

" 'Building or premises—Mercantile or manufacturing not occupied by the insured—NOC—(lessor's risk only).'

"It will be noted that none of these classifications 'specifically includes completed operations.' "

It is difficult, if not impossible, to reconcile all of the provisions of the policy, and when consideration is given to

all of the provisions, a non-expert may well be convinced that the policy is ambiguous.

The rule in such cases is tersely stated in 29 Am.Jur., Insurance, para. 258, as follows:

"* * * The general rule is that terms in an insurance policy which are ambiguous, equivocal, or uncertain to the extent that the intention of the parties is not clear and cannot be ascertained clearly by the application of the ordinary rules of construction, are to be construed strictly and most strongly against the insurer, and liberally in favor of the insured, so as to effect the dominant purpose of indemnity or payment to the insured."

In Zurich General Accident & Liability Ins. Co. v. Simms Company, 194 Ark. 676, 109 S.W.2d 933 (1937), the court at page 686 of 194 Ark., at page 938 of 109 S.W.2d, said:

"* * * We do not take time or occasion to cite numerous authorities to the effect that insurance policies, if ambiguous, will be construed most favorably for the insured and against the insurer."

In paragraph 11 of the stipulation it was agreed by the parties that the property upon which the insureds operated their business, known as Lake Hamilton Marine Service, is a tract of land riparian to Lake Hamilton, having 425 feet of shoreline, adjacent to which are four floating docks for boat storage space, moorage, boat repairs, and service facilities. Access to the lake is provided from physical improvements situated upon the land and from the lake to the improvements upon the land. In the conduct of their business, the insureds have on occasion moored boats of customers at points more distant from their floating docks than was the boat in question at the time it burned.

The plaintiff seems to contend that the word "premises" contained in the "Definition of Hazards" only refers to the particular dock, moorage or other facility used in servicing boats and not to the lake immediately adjacent to the particular facility.

The policy does not define the word "premises." In fact there can be no definition of premises applicable to every situation in which it may be used. It is a word of many meanings and usages. The term may or may not include land or buildings, or land adjacent to the buildings, but certainly includes water adjacent to structures designed to service boats using the lake, particularly when the water is a necessary means of ingress and egress to the building or structure. Manifestly, the meaning of the word in one connection may be radically different than in another. O'Connor v. Great Lakes Pipeline Co. (8 Cir. 1933), 63 F.2d 523; Gibbons v. Brandt (7 Cir. 1947) 170 F.2d 385.

The stipulated facts disclose without doubt that the premises should be construed to mean the entire business operation of the insureds. Certainly the plaintiff company and the insureds intended that the policy should apply to accidents, the cause of which originated at the fueling dock or other installations and culminated in damages before the boat departed from the premises used by the insureds in the operation of the business.

In the stipulation of facts the parties agreed that for the purpose of this proceeding "the court may consider the various allegations of the various complaints * * * as being true," except as they conflict with other provisions of the stipulation.

The allegations made in the suits that were filed in the state court all contain similar allegations, to the effect that the boat occupied by the plaintiffs in the state court cases was driven to the dock of the insureds for the purpose of refueling with high octane gasoline. Upon the arrival of the boat, an employee of the insureds removed the cap from the gas tank of the boat, and in so doing negligently disconnected the pipe between the cap and the tank, where the pipe adjoined

the tank, and poured fuel from the pump situated on the dock into the pipe leading to the tank. A portion of the fuel missed the tank because the connection of the pipe to the tank had been negligently removed by the employee. Therefore, fuel ran down into the bilge of the boat. The boat then started moving away from the dock but the engine was not functioning properly and soon ceased to operate entirely. The boat drifted slowly without power a distance of 73 feet from the dock when it burned in the water adjacent to and immediately in front of the dock. The operator of the boat, and probably other occupants, called to the employee of the insureds for assistance, and he was preparing to go to the assistance of the floating boat when the boat caught fire and burned, resulting in the injuries to the occupants. Under these facts the court cannot say that the accident occurred away from the premises owned, rented or controlled by the insured.

The plaintiff relies strongly upon the case of Tidewater Association Oil Co. v. Northwest Cas. Co. (9 Cir. 1959), 264 F.2d 879, and states: "It involves identical policy provisions, and it also involves alleged negligence in the sale and delivery of fuel."

The Tidewater case is clearly distinguishable from the instant case. The appellant in that case cited Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co. (8 Cir. 1954), 214 F.2d 418, in support of its contentions, but the court in its opinion, in discussing the Eighth Circuit case, at page 882 of 264 F.2d said:

"Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co., 8 Cir., 214 F.2d 418, cited by appellant, is distinguishable on the facts. In that case the handling or use of the product (coal) away from the premises after the insured had relinquished possession, or the condition of the product, had nothing to do with the accident which caused the injuries. Instead, the accident resulted from the insured's negligent use of a defective railroad car. In our case, on the contrary, whatever pre-existing negligence may have occurred, the immediate cause of the accident was the handling and use of the insured's contaminated product away from the insured's premises and after the insured had relinquished possession."

The plaintiff also relies on Bitts v. General Accident & Life Assur. Corp. (9 Cir. 1960), 282 F.2d 542. That case involved only the "products" hazard and did not involve completed operations, and in commenting upon it the plaintiff states: "We are not concerned here with the cause of the occurrence. Coverage is excluded if the accident occurs away from the premises owned, rented or controlled by the insured."

The court in its opinion in Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co., supra, quoted from the opinion of Judge Bell, 114 F.Supp. 472, at page 423 of 214 F.2d as follows:

" 'The question of coverage is to be determined from the allegations in the complaint against the insured.
\* \* \* \* \* \*

" 'Defendant's contention that the accident to Burnett was within exclusion (a) of the policy cannot be sustained. Defendant has failed to distinguish between the meaning of the word "hazards" and the "accident" or "injury" resulting from such hazard. In Hough v. Contributory Retirement Appeal Board, 309 Mass. 534, 36 N.E.2d 415, 417, 418, this distinction has been clearly stated:

" ' "An 'accident' is an unexpected, untoward event which happens without intention or design, and a 'hazard' is a danger or risk lurking in a situation which by chance or fortuity develops into an active agency of harm."

" 'See also, Caminetti v. Guaranty Union Life Ins. Co., 52 Cal.App.2d 330, 126 P.2d 159, 163.

" 'The insuring agreement in the instant case insures against certain hazards, and insofar as the exclusions become applicable, they must exclude hazards, rather than injuries or accidents. Thus, exclusion (a) must be construed to apply to the nature and place of the hazard rather than to the place of an accident or injury. The negligence alleged by Burnett against this plaintiff was in the failure to properly inspect, and in accepting and using a defective freight car. This hazard necessarily arose at the insured premises and as an incident to their use and did not occur at the place of unloading a vehicle while away from the premises.' "

In the instant case, the hazard necessarily arose at the insureds' premises and not away from the premises. In fact, the gasoline was never delivered to the operator of the boat. As a practical matter the gasoline in the bilge of the boat could not be construed as being in possession of the operator of the boat. The operator purchased gasoline to be stored in the tank of the boat and used in the operation of the boat.

Therefore the court is of the opinion that the policy issued by plaintiff covers the occurrence and that it is required under the terms of the policy to defend the suits against the insureds, even if such suits are groundless, false or fraudulent, and to pay on behalf of the insureds all sums within the limits of the policy which the insureds shall become legally obligated to pay as damages because of bodily injury sustained by the occupants of the boat, and also to pay all sums which the insureds shall become legally obligated to pay as damages to or destruction of the boat.

Judgment dismissing the complaint of the plaintiff and for the recovery by defendants of their costs is being entered today.