40219.   ASSURANCE COMPANY OF AMERICA v. BELL.

Decided December 2, 1963—
Rehearing denied December 18, 1963.

*Hurt, Baird & Peek, Hurt, Hill & Sosebee, Joe Freeman,* for plaintiff in error.

*Jones, Bird & Howell, Jeremiah Luxemburger,* contra.

RUSSELL, Judge. ■ While the covenant to pay for property damage as well as bodily injury under coverage E depends upon negligence of an insured, neither coverage F involving medical payments nor coverage G allowing up to $250 for property damage "caused by an insured" depends on a showing of negligence or legal liability to pay on the part of anybody. The policy provides that when an occurrence takes place written notice shall be given to the company; that as to coverage G proof of loss shall be filed within 60 days and no action shall lie against the company until after 30 days from the filing thereof, and that, as to coverage E, no action shall lie unless as a condition precedent the amount of the insured's obligation to pay has been finally determined either by judgment or by written agreement between the insured, the claimant, and the company.

The various counts of the petition allege that the loss occurred on March 29, 1962; that on April 4, plaintiff's wife acting as his agent orally notified Arthur Pierce, authorized agent and adjuster of the defendant, of the loss, and Pierce directed her to obtain an estimate for repair; that after obtaining the estimate she again talked with Pierce, who instructed her to take the car to a named automobile repair shop to be repaired, although she had procured a lower estimate at another shop, he stating the company would obtain a discount at this garage, and he further expressly and impliedly represented that the defendant would assume responsibility for the repairs. Plaintiff, relying on these

representations and instructions, did take the automobile to the garage designated by the adjuster and had it repaired at a substantially higher cost than he might otherwise have contracted for. Thereafter, on April 9, the defendant through its adjuster Pierce notified the plaintiff in writing that it denied liability because of lack of coverage under the policy. At no time was further information requested of the plaintiff, nor was the denial of liability based on any lack of compliance by the plaintiff with any policy provision.

"Clauses in insurance policies which prohibit waivers unless indorsed thereon refer only to the provisions which enter into the contract of insurance, and do not affect conditions which are to be performed after loss, such as furnishing proofs of loss and giving notice." *Corporation of the Royal Exchange Assurance of London v. Franklin,* 158 Ga. 644 (3) (124 SE 172, 38 ALR 626). The unqualified refusal to pay estopped the defendant from insisting upon either written notice or proof of loss. *Hanover Fire Ins. Co. v. Scroggs,* 90 Ga. App. 539, 547 (83 SE2d 295); *New York Underwriters & Co. v. Noles,* 101 Ga. App. 922 (115 SE2d 474). And, since it is alleged that the person with whom the plaintiff's wife dealt was an authorized agent and adjuster for the company, an agreement between the adjuster and the insured actually executed by the insured would also constitute an estoppel to urge the provision in the contract that the amount of the insured's obligation to pay, if not established by the judgment of the court, must first be established by written agreement of the insured, the claimant, and the company. The recognized function of an adjusting agent of an insurance company includes adjusting claims and paying losses. *Underwriter's Agency v. Sutherlin,* 55 Ga. 266 (2). This includes every act within the apparent scope of his authority. *Western Fire Ins. Co. v. Peeples,* 98 Ga. App. 365, 368 (106 SE2d 91); Couch on Insurance 2d, Vol. 4, 262, § 26:326. Where an authorized adjuster furnished by the insurance company for the purpose of settling claims agrees with the insured that the company is liable and authorizes the insured to incur expense in the settlement of the claim, and the insured in following the adjuster's directions not only incurs the expense of paying a claim for which he might

be liable in any event, but incurs additional expense as a result of taking the vehicle to the only place authorized by the adjuster for the repairs, if the claim is within the apparent coverage of a valid and subsisting policy the company will be estopped to contest either the fact or the amount of the liability.

■ Although this insurance policy fails to designate the party who may bring an action against it for failure to pay according to its terms, it does, as to coverage G insuring the property of others against damage up to $250, contain an unqualified promise to pay for "loss of property of others caused by an insured," and also an agreement under this coverage that the company "may pay for the loss in money or may repair or replace the property and may settle any claim for loss of property *either with the Insured or the owner thereof.*" There is no doubt but that the plaintiff's infant son was an insured under the policy and that he caused the damage, according to the allegations of the petition. There is no doubt but that the plaintiff is also the named insured and owner of the legal title to the policy and is therefore a person with whom the insurance company agreed that it might settle a claim for loss. The language *"an* insured" makes the company liable for property damage caused by any person included in the omnibus clause, while the language "the insured," referring to settlement of claims, is ambiguous, since it may mean either the named insured or the insured actually causing the damage. The plaintiff paid for the repairs to the automobile on the authorization of the adjuster for the defendant and seeks reimbursement in count 1 for his expenses up to the limit of liability for property damage not necessarily caused by negligence on the part of anyone. This insuring agreement, because of the fact that it comes into play on the occurrence of the loss and without regard to liability of an insured, and also because it does not limit payment by the company to any particular person, bears close resemblance to the medical payment provisions frequently encountered in automobile liability policies. As to such a provision, it was held in Dime Taxi Co. v. Central Mut. Ins. Co. of Chicago, 180 S.C. 426, 431 (186 SE 391): "If an insured provides and pays for such immediate surgical relief as is imperative following an accident covered by the policy, in that

instance, the insured would have the right to maintain an action against the insurer for reimbursement. If the insured procures immediate surgical relief, as is imperative, and thereafter refuses to pay for same, the party or parties furnishing the immediate surgical relief, imperative at the time, would have the right to maintain an action against the insurer not upon the theory, strictly speaking, that the insured was the agent of the insurer to procure immediate and imperative surgical relief, but upon the theory that this is a contract by the insurer to pay a reasonable amount to any person or persons called upon by the insured to render such surgical relief." This is an application of the "real party at interest" rule. In Georgia, under *Code Ann.* § 3-108: "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, shall be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent. The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on said contract." It has frequently been held that in general one other than the person to whom the contract of insurance was issued can not, in his own name, maintain an action thereon unless there has been a written assignment of the policy. *Walker v. General Ins. Co.*, 214 Ga. 758, 761 (107 SE2d 836); *National Fire Ins. Co. v. Grace,* 106 Ga. 264 (32 SE 100); *Fields v. Continental Ins. Co.,* 170 Ga. 28 (152 SE 60); *Travelers Ins. Co. v. Lancaster,* 51 Ga. App. 390, 392 (3) (180 SE 641); *Tyler v. National Life &c. Ins. Co.,* 48 Ga. App. 338 (2) (172 SE 747); *Equitable Fire Ins. Co. v. Jefferson Standard Life Ins. Co.,* 26 Ga. App. 241 (105 SE 818). All these cases except the first were decided prior to the amendment to *Code* § 3-108 (Ga. L. 1949, p. 455) allowing rights of action to beneficiaries, but the effect of the amendment need not concern us since the plaintiff is both the person in whom the legal interest in the contract is vested and the real party at interest by virtue of his having paid for the damage by direction of the company's adjuster. Additionally, as to count 3, he would be the person legally liable and so entitled to enforce the terms of the policy to the extent of his liability if that count

stated a cause of action. He is accordingly a proper party plaintiff in this action.

■ The defendant contends that no cause of action is set out under coverage G because an applicable policy provision excludes "loss arising out of the ownership, maintenance, operation, use, loading or unloading of any land motor vehicle" and that the petition shows a "use" of the automobile as a playpen by the plaintiff's son as a result of which the damage occurred. The word "use," in connection with the words ownership, maintenance, and operation, must be taken in its usual meaning of use as a motor vehicle. In *Ocean Acc. &c. Corp. v. J. B. Pound Hotel Co.*, 69 Ga. App. 447, 450 (26 SE 116) the automobile was used to haul oil, some of which spilled on the pavement and caused the plaintiff to fall. The court said: "In the instant case the truck is insured as a motor vehicle and not as a 'lubricating oil purveyor', as the policy does not state what kind of fluid is to be carried as a load on the truck." In Great American Indem. Co. of N.Y. v. Saltzman, 213 F2d 743, 747, a plaintiff, suing on a personal liability policy excluding loss arising out of the use of aircraft, accidentally set an airplane in motion while examining its controls. The court, in holding the exclusion inapplicable, said: "Of course if the term 'use' is construed to embrace all its possible meanings and ramifications, practically every activity of mankind would amount to a 'use' of something. However, the term must be considered with regard to the setting in which it is employed. . . The court is convinced that the term 'use' as employed in the exclusionary clauses was intended to mean and does mean the *ordinary* use or employment of the property or aircraft." To the same effect see Tucker v. State Farm Mutual Ins. Co. (La.) 154 S2d 226. The fact that the child unwittingly released the emergency brake while playing around the automobile is not such operation or use of the car as a motor vehicle as is contemplated by the exclusionary provision.

■ The petition alleges that plaintiff's wife as an insured caused the damage (count 2) and as his agent was negligent (count 3, and see *Herrin v. Lamar*, 106 Ga. App. 91, 95, 126 SE2d 454) in allowing the child to escape her supervision and enter the automobile unattended, when his wife knew that the

child was in the habit of and took pleasure in playing with the controls of automobiles, knew that the automobile was parked on an incline where if not braked it could roll toward the street, and, by reason of these facts, knew that if the child obtained access to the car it could disturb the controls and cause the automobile to roll toward the street where it could be damaged by collision with obstacles in its path. The conclusion is that the negligence of the plaintiff's wife, or of the plaintiff acting through his wife as his agent, and consisting of her lack of supervision of the child, was the proximate cause of the damage sustained.

These statements constitute an attempt to bring the plaintiff under the coverage of the policy by reason of the negligence of an adult insured, since a three year old child is not *capax doli*. *Crawford v. Southern R. Co.*, 106 Ga. 870 (33 SE 826). It is not an attempt to impute the child's negligence to the parent under *Code* § 105-108. "Broadly stated, parents at common law are not liable for torts of their minor children. To this general rule an exception has attached in situations where parents have entrusted a dangerous instrumentality to their children or have failed to restrain their children who they know possess dangerous tendencies." Lutteman v. Martin, 20 Conn. Sup. 371 (135 A2d 600). Thus, recovery was allowed under common law principles in *Davis v. Gavalas*, 37 Ga. App. 242 (139 SE 577) where it was alleged that the parents furnished and permitted their five year old child to use a velocipede on the sidewalk, knowing it was irresponsible, incompetent and unqualified to use it in this manner without injury to others. But recovery was denied in *Matthews v. Johnson*, 100 Ga. App. 331 (111 SE2d 158) where the parents left a lawn rake accessible to an infant who injured a playmate by this means. As the opinion shows, this latter decision is based on the theory that a lawn rake is not such a dangerous instrumentality as would lead the defendants to anticipate the injury which occurred, and not on the proposition erroneously stated in the headnote that it would be necessary to show gross negligence. Ordinary negligence, where shown to exist, is a sufficient basis for recovery. "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent

it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control." Restatement of the Law, Torts, § 316. See also 67 CJS 798, Parent and Child, § 68. But the parent is not an insurer that the child will not harm another. Tatum v. Lance, 238 Miss. 156 (117 S2d 795).

In Knopf v. Muntz, 121 NYS2d 422, where a minor child playing football in the street injured a pedestrain, the court denied recovery with the statement: "Heretofore a parent's liability has been restricted to incidents where the child has been engaged in an enterprise for the parents' benefit, or where the parent has supplied the means which has made the child's conduct dangerous, or where the parent has knowledge of a vicious propensity in the child and fails to take means to restrict it. . . The onus of responsibility has been limited to such instances where the parent has taken some active part in the creation of the danger. A failure to supervise or regulate the play is not such an active part, because in our society strict control of children is today so rare that its absence is no indication of a lack of reasonable care." See also Hudson v. Von Hamm, 85 Cal. App. 323 (259 P 374) where negligence in lack of supervision was attempted without avail to be grounded on knowledge that the child was "disposed to climb about the furniture." See also 155 ALR Anno. 81, 87. On the other hand, knowledge by the parent that the child is in the habit of indulging in certain conduct which may reasonably be expected to lead to the injury of third persons, combined with lack of reasonable care on the part of the parent to restrain and control the child so as to avoid this result or warn others of the propensity may be direct negligence on the part of a parent which will support a recovery. Cases falling within this category are well presented in Townsend v. State of Florida, 80 S2d 701 and Ellis v. D'Angelo, 116 Cal. App.2d 310 (253 P2d 675).

The petition in the present case alleges that the plaintiff's wife knew their infant son was in the habit of playing with the controls of automobiles, and knew that the automobile in ques-

tion was parked on an incline where, if not braked, damage would probably result, but it does not allege any facts from which the inference is authorized that she allowed the child to play about the automobile unattended or that he was in the habit of entering unattended automobiles and releasing the controls. The mere fact that she allowed him to escape her supervision is not a sufficient allegation of negligence, but amounts only to an allegation that the mother could and should have foreseen that the absence of her supervision of the child could have resulted in injury or damage. The probability of danger to a young child or to others naturally increases where such a child is unattended; nevertheless, the mere fact that the child escapes the supervision of a parent, and that the parent knows harm could result if he or she is not present, is not a sufficient allegation of actionable negligence. The true test is not the fact of escape. It is whether (a) a duty was raised against the parent by the facts of the case of anticipating that in the absence of his supervision a particular type of injury to another will result, and (b) whether he then exercised reasonable care to control and supervise the infant to prevent such result.

Count 3 of this petition alleges that the plaintiff's wife, acting as his agent, failed to exercise ordinary care in allowing the plaintiff's child to obtain access to the controls of the automobile unattended. Whether or not this is a sufficient allegation of negligence as against a general demurrer, this count does in general allege a state of facts which was made known to the defendant's adjuster and under which the adjuster might properly have concluded that the insured's wife was acting in an agency capacity, that she was negligent, and that her negligence rendered the insurance company liable to the owner of the automobile. He did in fact so conclude. He not only instructed the insured to have the automobile repaired at the expense of the insurance company, but he went further and designated a particular place to have the repairs made. He knew at the time that the garage designated (with which the insurance company did business and from which it obtained a discount unavailable to the plaintiff) had given the plaintiff an estimate which was higher than could be obtained elsewhere and would put him to additional expense. Under the applicable principles of estoppel discussed in

Division 1 of this opinion, such action on the part of the adjuster estopped the insurance company from denying liability after the plaintiff had incurred the expense authorized. We recognize the rule that an adjuster has no authority, apparent or otherwise, to settle a claim which is clearly not included within the coverage of the policy. See Northland Bottling Co. v. Farmers Mut. Auto. Ins. Co., 3 Wis. 2d 326 (88 NW2d 363); Laidlaw v. Hartford Acc. &c. Co., 254 N.Y. 391 (173 NE 557); Chisholm v. Royal Ins. Co., 225 Mass. 428 (114 NE 715). Where, as here, liability is doubtful, but the adjuster after investigation of the specific facts concludes that it exists and, acting on such assumption, causes the insured to expend sums in excess of what the insured would otherwise have spent in settlement of the claim, the defendant will not thereafter be heard to say that the acts of the adjuster do not bind it because in excess of his authority to investigate and settle the loss.

The trial court did not err in overruling the general demurrers to the petition.

*Judgment affirmed. Felton, C. J., and Eberhardt, J., concur.*