## HERBERT C. LANG v. GENERAL INSURANCE COMPANY OF AMERICA.

127 N. W. (2d) 541.

April 10, 1964—No. 39,156.

---

[9]See, Miller v. J. A. Tyrholm & Co. Inc. 196 Minn. 438, 445, 265 N. W. 324, 328.

*Altman & Grossman,* for appellant.
*Tyrrell, Jardine, Logan & O'Brien,* for respondent.

NELSON, JUSTICE.

Appeal from a declaratory judgment adverse to plaintiff in an action brought by him pursuant to the provisions of Minn. St. c. 555.

The judgment entered adjudged and decreed that a policy of insurance issued to plaintiff by defendant did not cover the operation of a motor scooter at the time and place of the accident involved herein and that defendant is not obligated to defend any action or to pay any judgment that may be entered against plaintiff.

The material facts are as follows: On October 14, 1959, defendant issued its Homeowners Policy No. HO 944334 to plaintiff effective for a 3-year period commencing on that date. The policy covered premises described as 100 Ardmore Drive, Golden Valley, Minnesota, the home of plaintiff, and also covered appurtenant structures and unscheduled personal property against loss by fire, windstorm, and other named perils. In addition it provided comprehensive personal liability insurance and coverage of medical expenses for injury sustained on the premises or "caused by the activities of an insured."

On May 25, 1962, plaintiff was the owner of what has been referred to in the proceedings as a motor scooter. A 1962 model manufactured by Harley-Davidson Motor Company, the motor scooter was a two-wheel vehicle, operated by a gasoline motor and so constructed that one passenger could ride immediately behind the operator. Plaintiff had made application for a 1962 motor vehicle license for the scooter and received license plates.

On May 25, 1962, Stephen J. Lang, plaintiff's son, then 14 years of age and a resident of plaintiff's household, was operating the motor scooter with one Tim Dahl as a passenger. While Stephen was crossing Highway No. 55 at its intersection with Ardmore Drive, about 2 blocks from plaintiff's home, the motor scooter collided with another vehicle. Tim was seriously injured and due notice of the accident was

38

given to defendant. In answer thereto defendant informed plaintiff that the policy would not cover claims arising out of the accident. The declaratory-judgment action followed.[1]

The policy in question defined "Insured" as—

"* * * (1) the Named Insured, and (2) if residents of his household, his spouse, * * * and any other person under the age of 21 in the care of an Insured, * * *."

An endorsement attached to the policy contained a provision with respect to personal liability coverage (coverage "E") under which defendant agreed:

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, * * * including death at any time resulting therefrom, sustained by any person, and as damages because of injury to or destruction of property, including the loss of use thereof."

With respect to medical payments (coverage "F"), defendant agreed:

"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services * * * to or for each person who sustains bodily injury * * * caused by accident,

"(a) while on the premises with the permission of an Insured, or

"(b) while elsewhere if such injury * * * (1) arises out of the premises or a condition in the ways immediately adjoining, (2) is caused by the activities of an Insured, * * *."

The endorsement also provided that with respect to such insurance as was afforded by coverage "E" the company would defend any suit.

The endorsement defined "automobile" as—

"* * * a land motor vehicle, trailer or semitrailer other than crawler or farm-type tractors, farm implements and, *if not subject to motor vehi-*

---

[1]Since the commencement of the action to obtain a declaratory judgment, a lawsuit has been started against the plaintiff and others on behalf of Tim Dahl.

*cle registration, any equipment which is designed for use principally off public roads.*" (Italics supplied.)

Under the "Special Exclusions" in the endorsement, the following language appeared:

"Section II of this Policy Does Not Apply:

\* \* \* \* \*

"(b) under Coverages E and F, to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles while away from the premises or the ways immediately adjoining \* \* \*."

It is conceded that the collision did not occur on the premises or the ways immediately adjoining them.

The trial court found that the motor scooter involved in the accident is an automobile within the definition contained in the policy and that the policy did not cover the operation of the motor scooter at the time and place at which the accident occurred. A memorandum accompanying its order for judgment stated:

"At the outset it should be noted that this was a Home Owner's Policy and designed to protect the owner against fire and windstorm and so far as here in issue to protect the homeowner [from] liability from occurrences on the premises. There is no ambiguity. The endorsement under Section II first defines an automobile as including much more than the ordinary word conveys. It is defined to include land motor vehicles with certain exceptions. A motor scooter does not come within the exceptions. A motor scooter is obviously a land motor vehicle. Having thus defined an automobile the policy excludes the same from coverage."

This appeal presents but a single issue, i. e., whether liability insurance is provided for bodily injury resulting from the use of a motor scooter under the policy.

The Minnesota law with respect to the obligation to defend and with respect to the construction of insurance policies has been clearly set forth by this court in the recent case of Bobich v. Oja, 258 Minn. 287, 293, 104 N. W. (2d) 19, 24, as follows:

"1. In the first place, an insurer, under an agreement to defend such as we have here, is not bound to defend a suit on a claim outside the coverage of the policy, even though under the terms thereof it is obligated to defend all suits brought against the insured, whether groundless, false, or fraudulent. In other words, the suit must be based on a claim covered by the policy before the obligation to defend comes into play. Where there is no coverage by reason of an exclusionary clause, there is no obligation to defend.

"2. Parties to insurance contracts, as in other contracts, absent legal prohibition or restriction, are free to contract as they see fit, and the extent of liability of an insurer is governed by the contract they enter into.

"3. Subject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts.

"4. Inasmuch as the language of an insurance policy is that of the insurer, any reasonable doubt as to its meaning must be resolved in favor of the insured, but the court has no right to read an ambiguity into plain language of an insurance policy in order to construe it against the one who prepared the contract.

"5. Where there is no ambiguity there is no room for construction. In such cases, the parties being free to contract, the language used must be given its usual and accepted meaning.

"6. Contracts of insurance, like other contracts, must be construed according to the terms the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense, so as to give effect to the intention of the parties as it appears from the entire contract.

"7. The endorsements or riders attached to an insurance contract are part of the contract, and the endorsements and the policy must be construed together.

"8. A policy and endorsements should be construed, if possible, so as to give effect to all provisions, but, where provisions in the body of the policy conflict with an endorsement or rider, the provision of the endorsement governs.

"9. Exclusions in a policy or endorsements are as much a part of the

contract as other parts thereof and must be given the same consideration in determining what is the coverage."

As pointed out by the trial court, there is no ambiguity in the policy. The policy was designed to protect the homeowner not only against fire and windstorm but also to protect him from liability arising out of occurrences on the premises. It was not, as such, an automobile liability insurance policy. See, Hardware Mutual Cas. Co. v. Curry, 21 Ill. App. (2d) 343, 157 N. E. (2d) 793.

Plaintiff cites as decisive of the issue herein Montlake Drug Co. v. Maryland Cas. Co. 185 Wash. 336, 54 P. (2d) 1009. But the accident involved in the Montlake case arose from the operation of a bicycle and the court held that a bicycle was not included in the language of the policy exclusion upon which the insurer sought to escape liability. It is hardly applicable to the facts of this case.

Another case cited by plaintiff is Deardorff v. Continental Life Ins. Co. 301 Pa. 179, 151 A. 814. The policy in that case was restricted to insuring the decedent against death or disability resulting from bodily injuries suffered by the wrecking or disablement of any private automobile, motor-driven car, or horse-drawn vehicle in which the insured was riding or driving or by his being accidentally thrown from such automobile, car, or horse-drawn vehicle. The court held that a motorcycle was not a motor-driven car and that it was not an automobile within the policy. The court further held that the term vehicle is a much broader term than automobile or car and went on to say (301 Pa. 181, 151 A. 814):

"* * * Under the definition of vehicle a bicycle would be included; so would a motorcycle; but under the definition of car, neither a bicycle nor a motorcycle would be included."

It is clear that the language of the policies construed in both of the foregoing cases is not similar to that in the policy before us. The decisions are not controlling here.

Parties to a contract are, of course, free to assign technical meanings to the words they employ. Therefore, where there has been a meeting

of the minds and no ambiguity exists, the courts are required to interpret the language of the parties as they have intended.

It is clear that in the instant case the word automobile is defined in a technical sense as a "land motor vehicle" and includes a motor scooter. The courts have often held that motorcycles are "vehicles." A motor scooter is a land motor vehicle and requires registration as such. It is propelled by a motor using gasoline and can be used to carry either a person or thing upon streets or highways from one place to another.[2]

Since the policy did not provide coverage for the motor scooter while it was being operated "away from the premises or the ways immediately adjoining," the judgment is affirmed.

Affirmed.

---

[2]Webster's Third New International Dictionary (1961) p. 2538, defines a vehicle as "a carrier of goods or passengers."