ROBERT TORBERT v. EARL G. ANDERSON
AND ANOTHER.
AETNA CASUALTY AND SURETY COMPANY,
THIRD-PARTY DEFENDANT.
LEWIS-THOMPSON AGENCY, INC.,
FOURTH-PARTY DEFENDANT.

222 N. W. 2d 341.

October 11, 1974—No. 44640.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly* and *Michael Berens,* for appellant.

*Faegre & Benson, G. Alan Cunningham,* and *Joseph M. Price,* for respondent Aetna Casualty and Surety Company.

Heard before Sheran, C. J., and Otis and Todd, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This litigation arises out of injuries sustained by plaintiff when he was hit by a boat operated by Dan Anderson and owned by his father, Earl G. Anderson. The Andersons have settled with plaintiff and claim coverage under a homeowners policy issued by Aetna Casualty and Surety Company. The trial court determined that the accident came within an exclusion of the policy and Earl Anderson appeals. We affirm.

The facts are undisputed. On September 1, 1969, plaintiff, Robert Torbert, was hit by the Anderson motorboat while swimming in Lake Pulaski in Wright County, Minnesota. Dan Anderson, who was 14 years old at the time, with his father's permission had operated the boat from the Anderson cabin across Lake Pulaski to pick up a friend. The boat was 16 feet in length with a 120-horsepower inboard-outboard motor.

At the time of the accident Earl Anderson held a policy covering his Golden Valley home and Lake Pulaski cabin. Section II of this policy provided personal liability and medical coverage arising out of accidents on the insured's premises or arising out of activities of the insured.[1] After Torbert commenced this action in July 1970, the Andersons tendered defense of the action to Aetna, which declined coverage because of the following special exclusion in the policy:

"Section II of this Policy Does Not Apply:

\* \* \* \* \*

"(b) under Coverages E and F, to the *ownership, maintenance, operation, use, loading or unloading* of (1) automobiles

---

[1] The relevant provision of Section II provides: "1. COVERAGE E— PERSONAL LIABILITY:

(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient."

or midget automobiles while away from the premises or the ways immediately adjoining, except under Coverage E with respect to operations by independent contractors for non-business purposes of an Insured not involving automobiles owned or hired by the Insured, (2) *watercraft owned by or rented to an Insured, while away from the premises, if with inboard motor power exceeding fifty horsepower,* or if a sailing vessel with or without auxiliary power and twenty-six feet or more in overall length; (3) watercraft, other than a sailing vessel, while away from the premises and powered in whole or in part by an undeclared outboard motor owned by an Insured * * *." (Italics supplied.)

Aetna was joined in this action as a third-party defendant.

The issues are (1) whether the accident occurred "away from the premises" within the meaning of the exclusion; and (2) whether Earl Anderson came within the exclusionary clause if his liability to Torbert was based upon negligent supervision of his child rather than upon ownership or operation of the boat.

1. The exclusion refers to "watercraft owned by or rented to an Insured, while away from the premises, if with inboard motor power exceeding fifty horsepower * * *." Unquestionably, the boat was owned by Anderson and the motor power exceeded 50 horsepower. However, Anderson argues that the boat was not away from the premises of his lake home at the time of the accident. He claims that the "premises" consist of the whole of Lake Pulaski. We do not agree.

The term "premises" is defined in the Aetna policy by the general conditions as:

"[T]he premises described in the Declarations, including grounds, garages, stables and other outbuildings incidental thereto, and private approaches thereto."

The supplementary definitions for personal liability coverage further provide:

"(c) premises: For purposes of Section II, the definition of 'premises' appearing in the Basic Policy shall include: (1) all

premises where the Named Insured or his spouse maintains a residence and includes private approaches thereto and other premises and private approaches thereto for use in connection with said residence, except business property and farms, * * *."

Both of the above definitions refer to *"private* approaches," the plain meaning of which does *not* include a public lake. Anderson relies on St. Paul Fire & Marine Ins. Co. v. Coleman, 204 F. Supp. 713 (W. D. Ark. 1962), affirmed, 316 F. 2d 77 (8 Cir. 1963). There, however, the accident occurred only 73 feet from the dock. Moreover, the policy was designed to protect the insureds in their business capacity as a marina operator and the policy did not define "premises." 204 F. Supp. 721. We have held that a motor scooter which was 2 blocks away from the insured's home on the street in front of his house was away from the premises for purposes of an exclusion in a similar homeowners policy. Lang v. General Ins. Co. 268 Minn. 36, 42, 127 N. W. 2d 541, 545 (1964).

2. The Aetna exclusion refers to the "ownership, maintenance, operation, use, loading or unloading of * * * watercraft." Anderson argues that it does not apply because his liability cannot be predicated upon any of the activities which modify "watercraft." He asserts that he can be found liable only on the basis of negligent supervision of his son, an activity not listed in the exclusion. Although he does own the boat, Anderson argues that such ownership is not enough to bring him within the scope of the exclusion because there can be no vicarious liability based on mere ownership of a boat, under Minnesota law.[2] This novel construction of the exclusion is not persuasive.

In light of the purposes of homeowners insurance and the nature of the risk undertaken, the trial court's construction of the exclusion was correct. The court found that Lang v. General Ins.

---

[2] This argument is based upon the holding in Felcyn v. Gamble, 185 Minn. 357, 241 N. W. 37 (1932), to the effect that a father furnishing a motorboat to members of his family is not vicariously liable for its negligent use.

Co. 268 Minn. 36, 127 N. W. 2d 541 (1964), was applicable. While we did not discuss this precise issue in Lang, we did say that the nature of the vehicle and the purpose of a homeowners policy were important considerations:

"* * * The policy was designed to protect the homeowner not only against fire and windstorm but also to protect him from liability arising out of occurrences on the premises. It was not, as such, an automobile liability insurance policy." 268 Minn. 41, 127 N. W. 2d 544.

The degree of risk which the insurance company contemplated is significant. Employers Mutual Lia. Ins. Co. v. Eagles Lodge, 282 Minn. 477, 480, 165 N. W. 2d 554, 557 (1969); Wyatt v. Wyatt, 239 Minn. 434, 437, 58 N. W. 2d 873, 875 (1953). In the instant case, Aetna intended to exclude liability arising out of the operation of a boat with more than 50 horsepower, owned or rented by the insured, and operated away from the premises. The nature of homeowners policies is consistent with coverage for boat-related accidents *on* the premises, regardless of the horsepower of the motor. The horsepower of a motor makes it more dangerous only when away from shore or dock. Marine insurance riders in homeowners policies are available for those who purchase or rent boats with large motors.

Cases relied on by Anderson are distinguishable.[3] A case cited by this court in Republic Vanguard Ins. Co. v. Buehl, 295 Minn. 327, 331, 204 N. W. 2d 426, 429 (1973), is McDonald v. Home

---

[3] Grigsby v. Coastal Marine Service of Texas, Inc. 412 F. 2d 1011 (5 Cir. 1969), is heavily relied upon. Even if Grigsby were otherwise binding upon this court, it is easily distinguishable. Grigsby involved the interpretation of the following exclusion: "This policy does not apply * * * to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft * * *."

The suit was a wrongful death action brought by the widow of Grigsby, a guard who died attempting to save an employee of Welders, the insured, which employee was on the ship because he had delivered parts from Welders to others who were repairing the ship. The per-

Ins. Co. 97 N. J. Super. 501, 235 A. 2d 480 (1967). There, suit was brought on a homeowners policy to compel the insurer to defend an action brought for the death of a passenger who had been riding in an automobile owned and driven by the insureds' unemancipated son. The insurer had refused to defend on the ground that the policy did not apply "to the ownership, maintenance, operation, use, loading or unloading of automobiles while away from the premises." 97 N. J. Super. 503, 235 A. 2d 481. Although the New Jersey court found that the exclusion was inapplicable because the action against the insureds was based upon their failure to supervise and control their child, the case is distinguishable for two reasons. First, the automobile in the McDonald case was owned and operated by the son, whereas the boat in the instant case was owned by the insured father. Second, the court specifically pointed out that "[t]he details of the alleged negligence were spelled out in the complaint and included causing and permitting Mickey to purchase and operate the automobile," and that "there was nothing in the * * * complaint which brought the claim within the policy exclusion." 97 N. J. Super. 504, 235 A. 2d 842. In contrast, the complaint in the present action alleged that both defendants were "operators" of the boat and that defendant Earl Anderson was the owner of the boat.[4] Such allegations clearly bring the claim within the policy exclusion. General allegations of negligence are insuf-

---

tinent holding was that the watercraft exclusion did not apply because the insured, Welders, was not engaged in the "maintenance" of the ship. However, in Grigsby *none* of the insured parties was engaged in any of the predicated activity. Neither Welders *nor* its employee, whom Grigsby was trying to save, was engaged in the maintenance of the ship.

[4] The specific allegations of negligence in the Torbert complaint were:

"III.

"At the time and place of the accident hereinafter described, defendants, and each of them, were operators of a 16-foot watercraft manufactured by Larson and equipped with and powered by a 120 horse-

ficient to maintain a cause of action within Republic Vanguard Ins. Co. v. Buehl, *supra.*[5]

Accordingly, we hold that Earl Anderson was not covered by

---

power motor and to which watercraft, a boat, was assigned a watercraft registration number or certificate MN6998AZ issued by the Department of Conservation, State of Minnesota, to Earl Anderson. At the time and place of the accident hereinafter described, defendant Dan Anderson, aka Daniel Anderson, a minor, was operating a 16-foot watercraft manufactured by Larson and equipped with and powered by a 120 horsepower motor and to which watercraft, a boat, was assigned a watercraft registration number or certificate MN6998AZ issued by the Department of Conservation, State of Minnesota, to Earl Anderson and that such watercraft was being operated with the permission, consent, and knowledge of defendant Earl G. Anderson. That said Earl Anderson is one and the same person as Earl G. Anderson, one of the defendants herein.

"IV.

"That Earl G. Anderson was the owner of and the person furnishing the said 16-foot watercraft and 120 horsepower motor, a dangerous instrumentality in whole or in part, which was involved in the accident hereinafter described.

"V.

"On September 1, 1969 while plaintiff, wearing a swimsuit, was in the water near a raft in a swimming area in Lake Pulaski, a body of water located in the County of Wright and State of Minnesota, carelessness and negligence on the part of the defendants, and each of them, resulted in the said 16-foot watercraft with 120 horsepower motor or a part thereof striking with great force and violence plaintiff Robert Torbert causing injuries and damages to plaintiff Robert Torbert all of which is hereinafter more fully alleged."

[5] The complaint in the Buehl case contained the following allegations of negligence:

"Said defendants LEONARD and BETTY BUEHL had the ability to control their son JOHN BUEHL and knew of the necessity for exercising said control, and had the opportunity to do so.

"Defendants LEONARD and BETTY BUEHL failed to exercise reasonable care to control their son defendant JOHN BUEHL, in that they caused and permitted the purchase of the motorcycle which defendant JOHN BUEHL was operating on June 24, 1966, at the time of said collision; that said

his homeowners policy with respect to liability arising out of his son's use of his boat away from the premises.

Affirmed.

defendants Leonard and Betty Buehl allowed defendant John Buehl to use said vehicle knowing his use of it was likely to result in injury to another as a natural and probable consequence.

"That defendants Leonard and Betty Buehl were negligent in that they took no reasonable or timely steps to protect plaintiff from the negligence of defendant John Buehl or from his known propensity, namely, bad driving habits." 295 Minn. 329, 204 N. W. 2d 428.