SOUTHEASTERN FIRE
INSURANCE CO.

v.

Jackson M. HEARD, et al.

Civ. No. C–84–150–G.

United States District Court,
N.D. Georgia,
Gainesville Division.

June 14, 1985.

Michael J. Gorby, Atlanta, Ga., for plaintiff.

G. Thomas Davis, Allen Gordon, Glenn Frick, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

Presently pending before the court are the motions of plaintiff Southeastern Fire Insurance Company (Southeastern) and defendants Jackson Heard, Mark Heard, and Heard Fuel Company (the Heards) for summary judgment.[1] Southeastern filed this declaratory judgment action seeking a determination that its policy did not cover a boating accident. Upon consideration, the court grants Southeastern's motion for summary judgment, and denies the Heards' motion for summary judgment.

The following facts are not in dispute. Southeastern issued homeowner's insurance policy No. HP–502–96–43 (the policy) to Jackson Heard. The policy contains the following exclusion:

> 1. Coverage E—Personal Liability ... [does] not apply to bodily injury or property damage:
>
> . . . .
>
> e. arising out of the ownership, maintenance, use, loading or unloading of:

---

1. Defendant Martha McPheeters Ciffone (Ciffone) opposed Southeastern's motion. Defendant Georgia Casualty and Surety Company has not responded to either motion.

....

(3) a watercraft:

(a) owned by or rented to any insured if the watercraft has inboard or inboard-outdrive motor power of more than 50 horsepower or is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length. . . .

(Homeowners Policy "'76," at 9, Ex. A to Southeastern's Complaint).

Ciffone, also a defendant in this action, alleges that defendants invited her to a business party on August 28, 1982 at Lanier Harbor Condominiums on Lake Lanier in Buford, Georgia. Ciffone went swimming in the lake and allegedly was run down by a boat operated by Craig Campbell, another person invited to the party. Jackson Heard owned this boat, which was 17 feet in length and contained an inboard/outboard motor of 140 horsepower.

Ciffone filed suit against the Heards in state court, alleging serious injuries suffered as a result of the Heards' negligent entrustment of the boat to Campbell, failure to warn, and breach of duty of care. The Heards assert that Southeastern would be liable for any judgment rendered against them, and have requested that Southeastern provide a defense in Ciffone's state court action. Southeastern filed this declaratory judgment action to determine whether its insurance covered the action. It claims that the exclusion applies to the incident.

The Heards concede that the policy excludes coverage of watercraft with an inboard or inboard/outdrive motor greater than 50 horsepower, and that the boat in question has an inboard/outboard motor of 140 horsepower. They contend, however, that the policy affords them coverage because the exclusion's language is unclear. According to them, the policy's wording indicates that power boats, as well as sailing vessels, are excluded only if they are 26 feet or more in length. The boat is 17 feet long.

■ An insurance contract is like any other; when it is clear and unambiguous the court will construe it as written. *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 299 S.E.2d 561 (1983); *Travelers Indemnity Co. v. Whalley Construction Co.*, 160 Ga. App. 438, 441, 287 S.E.2d 226, 229 (1981); *Cherokee Credit Life Ins. Co. v. Baker*, 119 Ga.App. 579, 582, 168 S.E.2d 171, 174 (1969). The court will construe an ambiguous policy, especially the exclusions or limitations, against the insurer. *Richards*, 250 Ga. at 615, 299 S.E. at 563. The court is not to create ambiguity by lifting a clause out of context, nor "to call forth doubt or make hypercritical constructions." *Baker*, 119 Ga.App. at 583, 168 S.E.2d at 174–75. The natural, obvious meaning is preferred. *Id.* The policy is to be read in accordance with the insured's reasonable expectations whenever possible. *Richards*, 250 Ga. at 615, 299 S.E.2d at 563.

■ In the instant case, the court finds that the exclusionary language is clear and unambiguous. As the court reads the clause, it excludes coverage of a motorboat of more than 50 horsepower or a sailing vessel 26 feet or more in overall length. The court cannot find another logical reading of the clause, and will not twist its unambiguous meaning to obtain the construction that the Heards seek. The clause clearly indicated to Jackson Heard that his boat was excluded, and thus he could not have reasonably expected its coverage. Because the clause is clear and unambiguous, the court will not construe it against Southeastern but must interpret it as written. Therefore, the court finds that the exclusion covers the boat.

■ The Heards also assert that Ciffone based her cause of action against them on negligent entrustment, and not on their negligence in the ownership, maintenance, or use of the boat.[2] Because an insurer's duty to defend is premised upon the injured party's allegations in her complaint, *Haley*

---

**2.** As stated in the order's text, she also alleged failure to warn and breach of duty to a business invitee.

v. *Georgia Farm Bureau Mutual Ins. Co.*, 166 Ga.App. 596, 305 S.E.2d 160 (1983), the Heards claim that the exclusion does not cover the incident.

Georgia courts have not addressed whether an insurance policy excluding coverage of an instrumentality covers negligent entrustment of that instrumentality. The court therefore must attempt to predict how Georgia will deal with this issue. In making that determination, the court will examine Georgia cases on insurance law, and decisions from other jurisdictions discussing the precise issue.

Numerous other jurisdictions considering the issue have taken both sides. Some courts have held that the exclusion pertains not to negligent entrustment, but to injury arising out of ownership, use, operation, or maintenance of the instrumentality. The tort of negligent entrustment, on the other hand, is based on the insured's negligently entrusting the instrumentality to someone else. Thus, negligent entrustment is a separate tort. The injury does not arise out of ownership or use of the instrumentality, but out of is negligent entrustment.[3] These courts often hold that the language of the phrase "arising out of the ownership, maintenance, operation, or use" is ambiguous, and construe it against the insurer.[4] A few courts have held that when the injury arises from instrumentality-related and noninstrumentality-related causes, the latter are not excluded, and the insurer must defend.[5]

**3.** Courts in states which follow this line of reasoning are Colorado; *Douglass v. Hartford Ins. Co.*, 602 F.2d 934 (10th Cir.1979) (Colorado law); *United Fire & Casualty Co. v. Day*, 657 P.2d 981 (Colo.App.1982); Illinois: *U.S. Fidelity & Guaranty Co. v. State Farm Mutual Automobile Ins. Co.*, 107 Ill.App.3d 190, 63 Ill.Dec. 14, 437 N.E.2d 663 (1982); Kansas: *Upland-Mutual Ins. Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974); Minnesota: *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426 (1973); New Jersey: *McDonald v. Home Ins. Co.*, 97 N.J.Super. 501, 235 A.2d 480 (1967); New York: *Lalomia v. Bankers & Shippers Ins. Co.*, 35 A.D.2d 114, 312 N.Y.S.2d 1018, (1970). Note, however, that later decisions in Minnesota and New Jersey indicate a trend away from this reasoning, *see infra* note 6; and that in another case, the Illinois appellate court found that a similar exclusion covered negligent entrustment, *see infra* note 5.

**4.** The cases cited *supra* in note 3 for the most part indicate that phrases such as "use, maintenance, or operation" are ambiguous. In *Grigsby v. Coastal Maritime Serv. of Texas*, 412 F.2d 1011 (5th Cir.1969), injury occurred when an employee who had come on board ship was asphyxiated. The language of the clause read: "This policy does not apply ... to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft...." *Id.* at 1037. The court found this language to be unclear and held that it should be interpreted to read maintenance, et al, by the *assured. Id.*
*Grigsby* is distinguishable from the instant suit. First, it concerns Louisiana and maritime law; this suit revolves around Georgia law. Second, the factual situation is different. The employer of the deceased employee was not involved in maintenance, but merely supplied equipment. *Id.* The word maintenance in that fact situation was held to be ambiguous. In the instant case, the boat admittedly driven by Campbell and owned by Jackson Heard caused Ciffone's injury. The word use in this fact situation is not ambiguous: the injury arose out of the boat's use. Additionally, a district court held that although *Grigsby* "stands for the proposition that the standard watercraft exclusion does not apply in instances where an insured's involvement with the watercraft is peripheral, it does apply when the activity giving rise to the risk is closely connected to the activities of the watercraft owner." *Farrell Lines, Inc. v. Insurance Company of North America*, 600 F.Supp. 740, 745 (E.D. La.1985). The court concurs with the *Farrell* court's interpretation of *Grigsby*.

**5.** In these cases, the key is whether the injury was so linked to the automobile that without it, no harm would have occurred. In *Payne v. Southern Guaranty Ins. Co.*, 159 Ga.App. 67, 282 S.E.2d 711 (1981), a person had a loaded gun in the car. In the course of driving the gun went off, injuring the passenger. The policy insured injury arising out of the use of an auto. The court held that in a motor vehicle insurance policy context, the term "arising out of" did not mean proximate cause. *Id.* at 68, 282 S.E.2d 711. The question was whether the injury originated from or grew out of, use of the vehicle. *Id.* In *Payne,* enough of a connection between the injury and use of the auto existed so that the policy covered the incident.
In *Washington v. Hartford Accident & Indemnity Co.*, 161 Ga.App. 431, 288 S.E.2d 343 (1982), a passenger in a school bus was assaulted with a gun by another passenger. The school's insurance policy covered damages resulting, inter alia from use of a vehicle. The court held that the injury did not "arise out of" use of the bus. The operation of the bus had no impact upon

Other courts have found that the exclusion applies to negligent entrustment.[6] Although several theories for this interpretation are offered, these cases in common

the incident; instead, the assailant simply shot the passenger on the bus because that is where they happened to be. *Id.* at 432, 288 S.E.2d 343. Thus, the insurance policy did not cover the incident.

A case in which the policy excluded injury arising out of use, of an auto is *State Farm Mutual Automobile Ins. Co. v. Partridge,* 10 Cal.3d 94, 514 P.2d 123, 109 Cal.Rptr. 811, (1973). In *Partridge,* a car drove off the road and a gun discharged. The court found that the insured was negligent both in modifying the gun and in driving the car. Because the injury could have occurred independently of the car, the court found that the occurrence was covered. *See also Waseca Mutual Ins. Co. v. Noska,* 331 N.W.2d 917 (Minn.1983) in which the insured negligently failed to seal barrels of burning ashes placed in his truck and drove negligently, causing a fire. Because the negligent failure to cover the barrels was a separate and distinct cause of the fire, the court found that the damage was covered notwithstanding an automobile exclusion.

In the cases cited *supra,* the separate cause must be truly separate and independent. The Illinois Court of Appeals in *U.S. Fidelity and Guaranty Co. v. State Farm Mutual Automobile Ins. Co.,* 107 Ill.App.3d 190, 63 Ill.Dec. 14, 437 N.E.2d 663 (1982) (USF & G) found that the injury was caused by negligent supervision of a child who fell getting out of a car, and that the policy excluded injury arising out of automobile use. Citing *Partridge,* the court held that negligent supervision was the covered act and thus coverage existed for the entire incident. An earlier Illinois appellate case, *State Farm Fire & Casualty Co. v. McGlawn,* 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980), held that negligent entrustment was not a separate cause, but arose out of the use of a motor vehicle. The court in *USF & G* noted *McGlawn* and referred to its dissent, but did not attempt to distinguish it.

**6.** Courts in the following states have held that the exclusion applies to negligent entrustment: Alabama: *Cooter v. State Farm Fire & Casualty Co.* 344 So.2d 496 (Ala.1977); Alaska: *Allstate Ins. Co. v. Ellison,* 757 F.2d 1042 (9th Cir.1985) (Alaska law); Arizona: *Lumbermans Mutual Casualty Co. v. Kosies,* 124 Ariz.App. 136, 602 P.2d 517 (1979); Arkansas: *Fox Hills Country Club, Inc. v. American Ins. Co.,* 264 Ark. 239, 570 S.W.2d 275 (1978); California: *Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 190 Cal.Rptr. 425 (1983); Delaware: *Insurance Co. of North America v. Waterhouse,* 424 A.2d 675 (Del.Super.Ct. 1980); Florida: *Gargano v. Liberty Mutual Ins. Co.,* 384 So.2d 220 (Fla.Dist.Ct.App.1980); Illinois: *State Farm Fire & Casualty Co. v. McGlawn,* 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980); Louisiana: *Picou v. Ferrara,* 412 So.2d 1297 (La.1982) (reversing 404 F.2d 1265 (La.App.1981)); Maine: *American Universal Ins. Co. v. Cummings,* 475 A.2d 1136 (Me.1984); Massachusetts: *Barnstable County Mutual Fire Ins. Co. v. Lally,* 374 Mass. 602, 373 N.E.2d 966 (1978); *Whitney v. Continental Ins. Co.,* 595 F.Supp. 939 (D.Mass.1984) (Massachusetts law); Michigan: *Michigan Mutual Ins. Co. v. Sunstrum,* 111 Mich.App. 98, 315 N.W.2d 154 (1981); *Shelby Mutual Ins. Co. v. U.S. Fire Ins. Co.,* 12 Mich.App. 145, 162 N.W.2d 676 (1968); Minnesota: *St. Paul Sch. Dist. v. Columbia Transit,* 321 N.W.2d 41 (Minn.1982); *Faber v. Roelofs,* 311 Minn. 428, 250 N.W.2d 817 (1977); *Torbert v. Anderson,* 301 Minn. 339, 222 N.W.2d 341 (1974); *Fillmore v. Iowa Nat'l Mutual Ins. Co.,* 344 N.W.2d 875 (Minn.App.1984); Missouri: *Shelter Mutual Ins. Co. v. Politte,* 663 S.W.2d 777 (Mo.App.1983); New Hampshire: *Hanover Ins. Co. v. Grondin,* 119 N.H. 394, 402 A.2d 174 (1979); New Jersey: *Bartels v. Romano,* 171 N.J.Super. 23, 407 A.2d 1248, (1979); South Dakota: *Great Central Ins. Co. v. Roemmich,* 291 N.W.2d 772 (S.D.1980); Texas: *Fidelity & Guaranty Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787 (Tex.1982); Utah: *National Farmers Union Property and Casualty Co. v. Western Casualty & Surety Co.,* 577 P.2d 961 (Utah 1978); Wisconsin: *Bankert by Habush v. Threshermen's Mutual Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150 (Bankert II) (1983), (aff'g *Bankert v. Threshermens Mutual Ins. Co.,* 105 Wis.2d 438, 313 N.W.2d 854 (1981) (Bankert I)). *See also LaBonte v. Federal Mutual Ins. Co.,* 159 Conn. 252, 268 A.2d 663 (1970), which deals with a parent's statutory liability for a child's use of a vehicle. The court held that liability under any theory of recovery, whether personal negligence, agency, or other type of vicarious liability, arising from an automobile is excluded. *Id.,* 268 A.2d at 666.

As noted *supra* in note 3, courts in Minnesota and New Jersey have held that the exclusion does not apply to negligent entrustment, in *Buehl,* (Minnesota) and in *McDonald,* (New Jersey). Later cases in those states, however, have distinguished *Buehl* and *McDonald.* In 1974, the Minnesota Supreme Court in *Torbert* noted that in those cases, the vehicles were owned by the insureds' children, unlike the case before it in which the insured owned the vehicle. 222 N.W.2d at 344. Additionally, in the earlier cases nothing in the complaint brought the claim within the exclusion; in *Torbert* the complaint alleged that the defendants operated and that one owned the boat. *Id.* at 344–45. The general allegations of the complaint were insufficient to bring the claim within *Buehl*'s purview. *Id.* at 345.

In *Faber,* decided in 1977, and St. Paul School District, written in 1982, the Minnesota Supreme Court again distinguished *Buehl.* The clause in the cases before it excluded injury "arising out of the use" of a vehicle. In *Buehl,* the exclusion stated that coverage did not apply, inter alia, to the use of a vehicle. The court

have held that the language is clear and unambiguous. Some courts have used the "dovetail" approach, when an insured has both homeowner's and, for example, automobile policies.[7] These courts have held that the homeowner's policy exclusions and the auto policy's coverage fit together, or dovetail. To stretch the homeowners exclusion to cover auto-related injuries would merely be duplicative.

Courts also have applied the exclusion based on an approach akin to the dovetail theory.[8] These courts found that the purpose of homeowner's insurance is to insure against home risk, and that the parties' reasonable expectations are of this type of coverage. The cost of the insurance takes this risk into account. Automobiles clearly are excluded. To allow coverage for excluded instrumentalities is contrary to the policy's language and the parties' expectations. Additionally, such a result would broaden the risk anticipated in homeowner's policies and could lead to an increase in rates.

The most well reasoned and convincing rationale for exclusion of negligent entrustment is an analysis of the tort itself.[9] Negligent entrustment is composed both of the entrustor's negligence in entrusting the instrumentality *and* the entrustee's negligent use of the instrumentality. Thus, the triggering element is negligent use of the item, for even if the entrustment was negligent, no cause of action could arise without an injury caused by negligent use of the item. Because negligent use is essential, negligent entrustment arises out of the use of a certain instrumentality. Thus, the exclusion applies. This construction is true to the exclusion's plain meaning.[10]

As stated earlier, no Georgia court has ruled on the precise issue of coverage for negligent entrustment. A review of Georgia insurance law and cases from other jurisdictions indicates that Georgia courts would follow those cases which hold that the clause excluding injury arising out of the use, inter alia, of an instrumentality applies to injury arising out of negligent entrustment of the instrumentality. First, the language of the exclusion in the instant action is clear and unambiguous. Ciffone's injuries allegedly occurred when Campbell drove the boat over her. The Heards cited *Hartford Accident & Indemnity Co. v. Booker*, 140 Ga.App. 3, 230 S.E.2d 70 (1976) as stating that the definition of use is elusive. The court noted that one is using an object when control over it is easily at hand. 140 Ga.App. at 4–5, 230 S.E.2d at 72. By this definition, Campbell was using the boat when it ran over Ciffone. Additionally, in *Booker*, the court interpreted "use" in the context of the state uninsured motorist statute, not an insurance policy.

In *Assurance Co. of America v. Bell*, 108 Ga.App. 766, 134 S.E.2d 540 (1963), the

held in both later cases that the exclusion applied to negligent entrustment. *St. Paul*, 321 N.W.2d at 46; *Faber* 250 N.W.2d at 821. In 1979, the New Jersey Superior Court, Appellate Division, in *Bartels* distinguished *McDonald*, because no automobile policy covered the loss in that case, and the complaint did not allege that the insured owned the vehicle. 407 A.2d at 1250.

The Minnesota courts have been limiting *Buehl* strictly and have been moving toward exclusion of claims of negligent entrustment. The situation in New Jersey is less clear, because no New Jersey Supreme Court case discussing the issue was found. *Bartels* limited *McDonald*, however, which indicates that the state is moving in line with the national trend.

7. *See Cooter*, 344 So.2d at 497. *See also Waterhouse*, 424 A.2d at 682 (Delaware); *Sunstrum*, 315 N.W.2d at 157 (Michigan); *Bartels*, 407 A.2d at 1250 (New Jersey).

8. *See Waterhouse*, 424 A.2d at 682 (Delaware); *Sunstrum*, 315 N.W.2d at 157 (Michigan); *Fillmore*, 344 N.W.2d at 878 (Minnesota); *Torbert*, 222 N.W.2d at 344 (Minnesota); *Bankert I*, 313 N.W.2d at 857 (Wisconsin).

9. *See supra* note 6.

10. This rationale also is applied to allegations of negligent supervision. *See e.g., Atlantic Mutual Fire Ins. Co. v. Cook*, 619 F.2d 553, 554 (5th Cir.1980) (Alabama law); *Faber*, 250 N.W.2d at 821 (Minnesota); *St. Paul*, 321 N.W.2d at 46 (Minnesota); *Fillmore*, 344 N.W.2d at 881 (Minnesota); *Bankert II*, 329 N.W.2d at 153 (Wisconsin); *Grondin*, 402 A.2d at 175 (N.H.); *Western Casualty & Surety*, 577 P.2d at 962 (Utah).

court defined use as it appeared in an insurance policy. The word, in connection with the phrase "arising out of the use, operation, or maintenance," must be taken in its usual meaning as use of a motor vehicle. *Id.* at 772, 134 S.E.2d 540. Use implies ordinary use or employment of the instrumentality. *Id.* In *Bell,* a child released the brake, causing the car to drift. The court held that such action was not ordinary use as contemplated by the parties, such as driving. *Id.* Under the *Bell* court's definition of use, Ciffone's alleged injuries clearly arose out of use of the boat. Campbell was driving the boat in the lake, clearly an ordinary and normal use of a boat. While Campbell was driving the boat, it allegedly struck and injured Ciffone. Thus, the court finds that the language of the exclusion is clear.[11]

Analysis of the Georgia definition of negligent entrustment indicates that the exclusive is applicable. Liability for the tort is predicated upon the entrustor's negligent act in lending the instrumentality to one whom he knows is incompetent, and in the negligent conduct of the entrustee in operating the instrumentality. *Bettis v. United States,* 635 F.2d 1144, 1148 (5th Cir. Unit B 1981). The negligent entrustment must concur with the negligent conduct of the entrustor. *Id.* Thus, both the entrustor's negligence in entrusting the vehicle *and* the entrustee's negligent use of the vehicle must cause the injury to show negligent entrustment. *Id.*

In the instant case, Ciffone alleged both elements of negligent entrustment in her complaint.[12] By its allegations, then, the complaint averred that the injury arose out of negligent use of the boat, an essential element of negligent entrustment. Any injury arising out of the use of an excluded instrumentality is not covered; thus, Southeastern is not obliged to defend the instant action.

Additionally, Georgia cases support this interpretation of the exclusion. In *Cotton States Mutual Insurance Co. v. Crosby,* 244 Ga. 456, 260 S.E.2d 860 (1979), a child who was raped sued the school claiming negligent breach of duty to safeguard the premises. The school's policy excluded damages arising out of bodily injury. The Georgia Supreme Court held that in a tort action some injury or initiating event must occur. *Id.* at 457, 260 S.E.2d 860. In this action, the initiating event was the rape. The child's right to recovery was based thereon. *Id.* The phrase "bodily injury" is not ambiguous, and rape clearly fit within that category. *Id.* at 459, 260 S.E.2d 860. Even though the cause of action was negligent breach of duty to safeguard the premises, the court found that the claim arose out of bodily injury and that the exclusion applied.[13]

In *St. Paul Fire & Marine Ins. Co. v. Cohen-Walker Inc.,* 171 Ga.App. 542, 320 S.E.2d 385 (1984), an individual sued Cohen-Walker, claiming that it incorrectly advised him in choosing an insurer, because that

11. *See supra* note 4. Additionally, the exclusion did not state that the use of the boat out of which the injury arose had to be used by the insured. The clause merely excludes a watercraft owned by or rented to an insured. In *Bankert I,* the Wisconsin Court of Appeals held that negligently entrusting the vehicle to a youth was an exercise of the powers of "ownership" and "use" of the vehicle. 313 N.W.2d at 856. The Wisconsin Supreme Court affirmed, but noted that this rationale, although correct, was "superfluous." 329 N.W.2d at 154.

12. *See supra* note 2. All of the theories of liability are based on the use of the boat, for if the boat had not been *used* Ciffone would not have been injured.
The Heards claim that Ciffone did not allege ownership or use of the boat in her negligent

entrustment count. That count, however, stated that the Heards were in possession and control of the boat, and that Ciffone was injured by the boat driven by the Heards' guest. (¶ 6 of Complaint). Additionally, the court will consider the entire complaint's allegations, which mention ownership and use of the boat as causing Ciffone's injury.

13. The child also alleged that the school unlawfully detained her after the rape. The court held that this cause of action did not arise out of the bodily injury. She could have alleged unlawful detention or have been detained regardless of the rape. The *injury* complained of in that count was the unlawful detention itself. 244 Ga. at 458, 260 S.E.2d at 862.

482

insurer became insolvent and could not pay his claims. Cohen-Walker's insurance policy excluded claims based on an insurer's inability to pay its debts. The court of appeals found that this language is unambiguous. *Id.* at 544, 320 S.E.2d 385. It noted that even though the complaint was in tort for Cohen-Walker's negligence, the underlying injury was caused by the recommended insurance company's failure to pay its debts. *Id.* at 545, 320 S.E.2d 385. Thus, the exclusion applied.[14]

The cases cited previously indicate that Georgia courts look to the underlying cause of the injury to determine coverage, and not just to the specific theory of liability alleged. The negligent *use* of an entrusted vehicle is an essential part of the tort of negligent entrustment in Georgia. Looking to the underlying cause of injury in this action, a Georgia court would find that alleged negligent use of the boat as well as the alleged negligence of the entrustor caused Ciffone's injuries. By the clear and unambiguous language of the exclusion, the incident is not covered.[15]

Finally, the court notes that the out of state cases which exclude negligent entrustment coverage are well reasoned and logical. In fact, the more recent cases are following this trend. The interpretation comports well with the policy's language and the parties' expectations. The specific theory of liability alleged should not serve to ignore totally the straight-forward meaning of the clause. To carry the Heards' argument to its logical conclusion, an insurer would have to exclude every conceivable theory of liability. Obviously, this is impractical and illogical. So long as the injury arose out of use, maintenance, or ownership of an excluded instrumentality, the exclusion should prevail.[16]

In summary, the court grants Southeastern's motion for summary judgment, and denies the Heards' motion for summary judgment.

---

14. *See also Pacific Indemnity Co. v. N.A., Inc.,* 120 Ga.App. 793, 172 S.E.2d 192 (1969), in which a policy excluded loss by theft. Someone had removed copper flashing from the roof of the insured's building, causing property damage. The court found that the damage was excluded by the express policy terms, because it occurred incident to theft. *Id.* at 795, 172 S.E.2d 192.

In *Bell, supra,* the court noted that the insured was attempting to bring the accident, which occurred when a child released the car brake, under the policy by claiming negligent supervision. The court did not decide the issue, but noted that the insurer's adjustor knew of this claim, concluded that the insurance covered, and instructed that the car be repaired. The court found that his actions constituted estoppel, which prevented the insurer from denying coverage. 108 Ga.App. at 775–76, 134 S.E.2d at 546.

15. The dovetail approach does not fit the instant case, because no evidence was presented of a watercraft coverage policy.

16. The Heards attempt to distinguish the instant policy from those in other cases, based on the absence of "operation" in the clause at hand. The court believes that this is a distinction without a difference. Use must be taken in its usual meaning. *Bell,* 108 Ga.App. at 772, 134 S.E.2d at 544. Thus *use* of a boat includes driving it on water. The cases made no distinction between policies with or without the word "operation." In fact, some of the policies with or without the word "operation." In fact, some of the policies in those cases left out that word. *E.g., Taber v. Nationwide Mutual Ins. Co.,* 447 So.2d 698 (Ala. 1984); *Ellison,* 757 F.2d at 1043–44 (Alaska law); *Faber,* 250 N.W.2d at 821 (Minnesota); *Fillmore,* 344 N.W.2d at 877 (Minnesota App.).